IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re Apple iPhone 3G Products Liability Litigation | NO. MDL C 09-02045 JW<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND** |

Presently before the Court is Defendant Apple's Motion to Dismiss.[1] The Court conducted a hearing on November 14, 2011. Based on the papers submitted to date and oral argument, the Court GRANTS Defendant Apple's Motion to Dismiss.

**A.    Background**

A detailed summary of the factual allegations and procedural history of this case may be found in the Court's April 2, 2010 Order.[2] The Court reviews the procedural history as relevant to the present Motion.

On April 2, 2010, the Court dismissed the Master Administrative Consolidated Amended Complaint[3] in this case as to both Defendant ATTM and Defendant Apple,[4] with prejudice, on the

---

[1] (Apple Inc.'s Notice of Motion and Motion to Dismiss Master Administrative Consolidated Fourth Amended Complaint; Memorandum of Points and Authorities in Support Thereof, hereafter, "Motion," Docket Item No. 249.)

[2] (Order Granting Defendant AT&T Mobility, LLC's Motion to Dismiss Master Consolidated Complaint; Denying as Moot All Other Motions, hereafter, "April 2 Order," Docket Item No. 184.)

[3] (hereafter, "MAC," Docket Item No. 44.)

[4] The Master Administrative Consolidated Amended Complaint named both Apple, Inc. ("Apple") and AT&T Mobility, LLC ("ATTM") as Defendants. (See, e.g., April 2 Order at 1.)

1 ground that it was preempted by the Federal Communications Act ("FCA"). (See April 2 Order at
2 15-16.) The Court explained that this dismissal was as to "all state law causes of action," as well as
3 Plaintiffs' cause of action for violation of the Magnuson-Moss Warranty Act. (Id.) However, the
4 Court granted Plaintiffs leave to amend to assert claims under the FCA. (Id.)

5       On May 25, 2010, the Court denied Plaintiffs' Motion for Reconsideration of its April 2
6 Order.[5] In its May 25 Order, the Court explained, *inter alia*, that Plaintiffs had failed to present
7 adequate grounds for reconsideration of the Court's findings in the April 2 Order regarding the
8 status of "either Defendant [as] an indispensable party." (See May 25 Order at 3.) The Court
9 explained that it had "fully considered the record and applicable law before deciding the matter" of
10 indispensability, and further explained that the issue of indispensability "was raised in oral argument
11 and Plaintiffs had an opportunity to respond, although they chose not to." (Id.)

12       On December 9, 2010, the Court granted Defendants' motion to stay proceedings in light of
13 the Supreme Court's then-pending decision in AT&T Mobility LLC v. Concepcion.[6] The Court
14 explained that a stay was warranted because the "Supreme Court's decision in [Concepcion] could
15 likely simplify the legal questions in the present case." (Id. at 3.) Further, the Court explained that
16 the stay "must apply equally to both [Defendant ATTM and Defendant Apple]," on the basis of the
17 Court's prior ruling that "this case cannot proceed against Defendant Apple alone."[7] (Id. at 4.)

---

21     [5] (Order Denying Plaintiffs' Motion for Leave to File a Motion for Reconsideration;
22 Granting Defendants' Motions for Extension of Time to File Response, hereafter, "May 25 Order," Docket Item No. 198.)

23     [6] (Order Granting Defendants' Motion to Stay Proceedings; Granting Plaintiffs' Motion for
24 Leave to File Third Amended Master Administrative Complaint; Denying All Other Motions as Premature, hereafter, "December 9 Order," Docket Item No. 238.)

25     [7] In its December 9 Order, the Court also granted Plaintiffs leave to amend to "add claims
26 which were previously dismissed and potentially revived" due to a recent Ninth Circuit opinion. (Id. at 4-7 (citing Shroyer v. New Cingular Wireless, 622 F.3d 1035 (9th Cir. 2010)).) The Court went
27 on to explain that it "may ultimately distinguish Shroyer following amendment and again reject Plaintiffs' state law claims as preempted [by the FCA]." (Id. at 6-7.)

28     2

*United States District Court*
*For the Northern District of California*

On April 27, 2011, the Supreme Court issued its decision in Concepcion.[8] On September 1, 2011, the Court lifted the stay in this case. (See Docket Item No. 242.) On September 9, 2011, Plaintiffs filed their Master Administrative Consolidated Fourth Amended Complaint. (hereafter, "FAC," Docket Item No. 243.)

**B.     Standards**

Under Fed. R. Civ. P. 12(b)(7), a party may bring a motion to dismiss for "failure to join a party under Rule 19." Fed. R. Civ. P. 19 provides that a party "must be joined" if, in that party's absence, the court "cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a). Under Rule 19, courts undertake a three-step analysis to determine whether an absent party should be joined. See E.E.O.C. v. Peabody W. Coal Co., 400 F.3d 774, 779 (9th Cir. 2005). First, the court must determine whether the absent party is "necessary." See Takeda v. Northwestern Nat'l Life Ins. Co., 765 F.2d 815, 819 (9th Cir. 1985). A party is "necessary" if, *inter alia*, "complete relief cannot be accorded among those already parties" in that party's absence. Id. (citing Fed. R. Civ. P. 19(a)). Second, if the absent party is a "necessary party under Rule 19(a)," the court must determine "whether it is feasible to order that the absentee be joined." Peabody W. Coal Co., 400 F.3d at 779. There are three circumstances "in which joinder is not feasible": (1) "when venue is improper"; (2) "when the absentee is not subject to personal jurisdiction"; and (3) "when joinder would destroy subject matter jurisdiction." Id. Third, "if joinder is not feasible," the court must determine "whether the case can proceed without the absentee, or whether the absentee is an 'indispensable party' such that the action must be dismissed." Id.

**C.     Discussion**

Defendant Apple moves to dismiss Plaintiffs' Fourth Amended Complaint, on the grounds that: (1) this case cannot proceed without ATTM, which the Court has already ruled to be an indispensable party; (2) Fed. R. Civ. P. 9(b) requires dismissal of Plaintiffs' fraud-based claims; (3) Plaintiffs cannot state a claim under RICO; (4) Plaintiffs cannot assert California claims on behalf of

---

[8] 131 S. Ct. 1740 (2011).

3

1 Plaintiffs in the transferred actions; (5) Plaintiffs' claims for breach of warranty fail; (6) Plaintiffs'
2 negligence claim is barred by the economic loss doctrine; and (7) unjust enrichment, "common
3 counts," and declaratory judgment are not independent claims for relief. (Motion at 3-32.)

4 Plaintiffs respond that: (1) ATTM is neither an indispensable nor a necessary party; (2)
5 Plaintiffs' fraud-based claims satisfy the pleading requirements; (3) Plaintiffs adequately plead
6 RICO violations; (4) California law applies to all claims against Apple; (5) Plaintiffs' claims for
7 breach of warranty do not fail, because Plaintiffs provided Defendant with sufficient notice of those
8 claims; (6) Plaintiffs plead a viable claim for negligence; and (7) Plaintiffs plead viable claims for
9 unjust enrichment and restitution based on quasi-contract.[9]

10 Because the issue of whether ATTM is an indispensable party may be dispositive, the Court
11 considers it first.

### 1. Is ATTM a Necessary Party?

13 Here, in considering the Master Administrative Consolidated Amended Complaint, the Court
14 determined that all fourteen of Plaintiffs' claims were "based on the core allegation that [Defendants
15 ATTM and Apple] knew that ATTM's 3G network was not sufficiently developed to accommodate
16 the number of iPhone 3G users, and that Defendants deceived Plaintiffs into paying higher rates for
17 a service that Defendants knew they could not deliver." (April 2 Order at 9.) Thus, the Court
18 concluded that Plaintiffs' allegations targeted "the sufficiency of ATTM's network infrastructure
19 and the ability of Apple's iPhone 3G to operate within the network to deliver the promised 'twice as
20 fast' performance." (Id.) The Court went on to consider whether "Plaintiffs' claims can proceed as
21 to Defendant Apple in the absence of Defendant ATTM," and concluded that they could not. (Id. at
22 14.) The basis of this conclusion was the Court's finding that the "gravamen of [Plaintiffs']
23 allegations is that any defect in the iPhone 3G merely exacerbated the poor quality of service
24 resulting from ATTM's allegedly deficient 3G network infrastructure." (Id.) The Court thus found

---

[9] (Plaintiffs' Memorandum of Points and Authorities in Opposition to Apple Inc.'s Motion to Dismiss Master Administrative Consolidated Fourth Amended Complaint at 3-31, hereafter, "Opp'n," Docket Item No. 255.)

4

that it was "unable to reasonably separate Plaintiffs' claims to pertain only to Defendant Apple." (Id.) Therefore, as discussed above, the Court concluded that "any adjudication of claims as to Defendant Apple would necessarily require a determination of the sufficiency of ATTM's 3G network infrastructure." (Id. at 15.) Accordingly, the Court found that "Defendant ATTM is an indispensable party" without whom this case "could not proceed." (Id.)

Here, in the Master Administrative Consolidated Fourth Amended Complaint, Plaintiffs allege as follows:

> Since at least June 2008, Apple uniformly misrepresented to the public the material characteristics of superior speed, strength and performance that consumers would obtain from buying Apple's new iPhone 3G. (FAC ¶ 40.) Apple profited from its misleading representations by gaining market share, and by receiving billions of dollars in additional renevue by selling millions of new iPhone 3G devices. (Id. ¶ 52.) Such profits were derived both from the sale of the phone and subsidies Apple received from its cellular service provider, all at the expense of customers who were unable to consistently enjoy the benefits and characteristics Apple represented consumers would obtain with an iPhone 3G. (Id.) As both Plaintiffs and Class members purchased an iPhone 3G based on and in response to representations that the iPhone 3G possessed a material characteristic (materially faster upload and download rates by consistently operating at "3G" speed) it does not in fact possess, they did not receive what they reasonably expected to receive and bargained for. (Id. ¶ 67.)
> The original iPhone operated on a second generation, or 2G, network, which had a maximum data transfer rate of 237 kbps (kilobytes per second). (FAC ¶ 41.) The iPhone 3G was designed to operate on both the older 2G network and a new third generation, or 3G, network. (Id.) For many of the initial iPhone 3G models, the maximum data transfer rate was only increased to 384 kbps–meaning it would never actually be "twice as fast," as Apple represented. (Id.)
> Apple advertised the iPhone 3G as "twice as fast." (FAC ¶ 44.) However, due to hardware and software deficiencies within the iPhone 3G, Plaintiffs and the Class experience connectivity on the 3G network only a fraction of the time, or receive no 3G connectivity and speed at all. (Id. ¶ 49.) The primary represented advantage of the iPhone 3G–consumers being able to use their iPhone 3G to operate at enhanced network speeds and download data faster–was thus not provided to consumers on a regular basis. (Id.) This resulted in a material difference between promised and actual performance of the iPhone 3G. (Id.)
> These performance problems with the iPhone 3G are due either to a hardware flaw–demanding too much power to operate routinely at 3G bandwidth levels and due to the iPhone 3G device's sensitivity or inability to consistently provide access to 3G network speeds–or a software flaw in the programmed algorithms. (FAC ¶ 53.)

Based on the allegations above, and upon review of the Master Administrative Consolidated Fourth Amended Complaint as a whole, the Court finds that it, like previous versions of the Complaint, is based on the core allegation that the 3G network could not accommodate iPhone 3G users, and that Plaintiffs were deceived into paying higher rates for service which could not be

5

delivered on the 3G network. It is true that the Master Administrative Consolidated Fourth Amended Complaint differs from earlier versions of the Complaint, insofar as it omits all references to ATTM. However, Plaintiffs have simply deleted references to ATTM that appeared in their previous Complaint without altering the gravamen of their allegations.[10] These cosmetic modifications to the Complaint are unavailing, however, as the Court has already held that ATTM is an "indispensable party," for the reasons described above. (April 2 Order at 14-15.)

Plaintiffs' contention that they should be allowed to proceed against Apple alone because "factual revelations in the intervening years since these cases were first filed make it appear more likely than not that the iPhone 3G's defects resulted from flaws within the phone's hardware and software" is misguided. (Opp'n at 1.) Previous iterations of Plaintiffs' Complaint also included allegations that hardware and software flaws in the iPhone 3G were responsible for the iPhone 3G's problems with connecting to the 3G network.[11] Indeed, in its April 2 Order, the Court recognized that "some allegations [in Plaintiffs' earlier Complaint] state that flaws in the iPhone 3G contributed to the poor performance experienced by Plaintiffs." (April 2 Order at 14.) Thus, the Court specifically considered such allegations in the course of finding that "any adjudication of claims as to [Apple] would necessarily require a determination of the sufficiency of ATTM's 3G network

---

[10] (Compare MAC ¶ 73 (alleging that Plaintiffs paid "more to receive essentially the same, if not inferior, service," because "[i]n addition to the $299 cost of the iPhone 3G, ATTM charged consumers $10 per month for 24 months in additional fees to sign up for additional 3G network coverage and a $28 additional equipment charge") with FAC ¶ 62 (alleging that Plaintiffs paid "more to receive essentially the same, if not inferior performance," because "[i]n addition to the $299 cost of the iPhone 3G, the cellular carrier [i.e., ATTM] charged consumers $10 per month for 24 months to sign up for additional 3G network coverage and a $28 additional equipment charge"); compare also MAC ¶ 75 (alleging that as a "result of Defendants' material misrepresentations and omissions of material facts, Plaintiffs and Class members are locked into a two-year service plan with inferior ATTM 3G network connectivity") with FAC ¶ 64 (alleging that as a "result of Apple's material misrepresentations and omissions of material facts, Plaintiffs and Class members are locked into a two-year service plan with, [sic] due to hardware [and] software deficiencies in the iPhone 3G, [sic] limited sustained 3G network speed").)

[11] (See, e.g., MAC ¶ 62 (alleging that the "iPhone 3G suffers from poor connectivity to the ATTM 3G network due either to a hardware flaw–demanding too much power to operate routinely at 3G bandwidth levels and the iPhone 3G device's sensitivity or inability to consistently access 3G network radio connectivity–or a software flaw in the programmed algorithms").) This was one of the allegations considered by the Court in its April 2 Order. (See April 2 Order at 8.)

infrastructure."[12] (Id. at 15.) Accordingly, consistent with its prior rulings, the Court finds that ATTM is a necessary party.

### 2. Is It Feasible for ATTM to Be Joined?

Here, ATTM was named as a Defendant in each iteration of the Complaint prior to the current one.[13] Thus, given that ATTM has previously been a Defendant in this case, joinder of ATTM is feasible.[14] See Peabody W. Coal Co., 400 F.3d at 779.

In sum, the Court finds that ATTM is a necessary party which can, and therefore must, be joined.

## D. Conclusion

The Court GRANTS Defendant Apple's Motion to Dismiss for failure to join a necessary party under Fed. R. Civ. P. 12(b)(7).

The Court ORDERS that ATTM be made a party to this action. On or before **December 19, 2011**, Plaintiffs shall file an Amended Complaint consistent with the terms of this Order.

Dated: December 1, 2011

JAMES WARE
United States District Chief Judge

---

[12] Plaintiffs further contend that the Court should not dismiss the Complaint under Rule 19, on the grounds that: (1) Apple "fails to offer evidentiary support" that ATTM is necessary or indispensable; (2) ATTM is merely a joint tortfeasor, and thus is not necessary; and (3) ATTM "is not an indispensable party." (Opp'n at 6-9.) However, all of these contentions are belied by the fact that the Court has already found that ATTM is an indispensable party, as discussed above.

[13] (See, e.g., Master Administrative Consolidated Third Amended Complaint ¶ 24, Docket Item No. 239.)

[14] Plaintiffs do not contend that joinder of ATTM is no longer feasible. (See Opp'n.)

7

**United States District Court**
For the Northern District of California

1  **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2  Adam Plant aplant@wdklaw.com
Adam R. Gonnelli agonnelli@faruqilaw.com
3  Alan M. Mansfield alan@clgca.com
Alexis Alexander Phocas aap@classlitigation.com
4  Andrew David Muhlbach amuhlbach@mofo.com
Anne M. Hunter AHunter@mofo.com
5  Christopher D. Jennings cjennings@emersonpoynter.com
Donald M. Falk dfalk@mayerbrown.com
6  Gina M. Doughterty gdougherty@emersonpoynter.com
Gordon M. Fauth gmf@classlitigation.com
7  Heather A. Moser hmoser@mofo.com
James E. Cecchi jcecchi@carellabyrne.com
8  James Robert Hail jim@doylelowther.com
Jason C. Murray jmurray@crowell.com
9  Jay P. Saltzman jay@saltzmanlawny.com
Joe R. Whatley jwhatley@wdklaw.com
10  Joel Dashiell Smith jsmith@flk.com
John Allen Lowther john@doylelowther.com
11  John G. Emerson jemerson@emersonpoynter.com
Joseph Preston Strom petestrom@stromlaw.com
12  Kathleen Taylor Sooy ksooy@crowell.com
Lynn E. Parseghian lparseghian@crowell.com
13  Marc Lawrence Godino mgodino@glancylaw.com
Mario Anthony Pacella mpacella@stromlaw.com
14  Mark S. Reich mreich@csgrr.com
Martha Kay Martin mmartin@crowell.com
15  Michael M. Goldberg info@glancylaw.com
Mila F Bartos mbartos@finkelsteinthompson.com
16  Penelope A. Preovolos PPreovolos@mofo.com
Penelope Athene Preovolos ppreovolos@mofo.com
17  Rosemary M. Rivas rrivas@finkelsteinthompson.com
Scott E. Poynter scott@emersonpoynter.com
18  Stephen A. Weiss sweiss@seegerweiss.com
W Lewis Garrison pputman@hgdlawfirm.com
19  William James Doyle bill@doylelowther.com
Aaron L. Agenbroad alagenbroad@jonesday.com
20  Arthur William Lazear awl@hoffmanandlazear.com
Catherine Suzanne Nasser cnasser@jonesday.com
21  H. Tim Hoffman hth@hoffmanandlazear.com
Morgan Matthew Mack mmm@hoffmanandlazear.com
22

23  **Dated: December 1, 2011**                              **Richard W. Wieking, Clerk**

24
**By:     /s/ JW Chambers**
25                **Susan Imbriani**
                 **Courtroom Deputy**
26

27

28

8