PAGES 1 - 47

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JAMES WARE

| | | |
|---|---|---|
| IN RE:  APPLE IPHONE 3G | ) | NO. 5:09-MD-02045 JW |
| | ) | |
| PRODUCTS LIABILITY LITIGATION. | ) | |
| | ) | SAN FRANCISCO, CALIFORNIA |
| | ) | MONDAY |
| | ) | APRIL 9, 2012 |
| _____ | ) | |

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFFS**        DOYLE LOWTHER
                          10200 WILLOW CREEK ROAD, SUITE 150
                          SAN DIEGO, CALIFORNIA  92131
                   BY:  **JAMES HAIL, ESQUIRE**

                          FARUQI & FARUQI
                          10866 WILSHIRE BOULEVARD, SUITE 1470
                          LOS ANGELES, CALIFORNIA  90024
                   BY:  **DAVID E. BOWER, ESQUIRE**

                          CONSUMER LAW GROUP OF CALIFORNIA
                          10020 WILLOW CREEK ROAD, SUITE 160
                          SAN DIEGO, CALIFORNIA  92131
                   BY:  **ALAN M. MANSFIELD, ESQUIRE**

(FURTHER APPEARANCES ON FOLLOWING PAGE)

*REPORTED BY:  JOAN MARIE COLUMBINI, CSR 5435, RPR*
              *OFFICIAL COURT REPORTER, U.S. DISTRICT COURT*

**APPEARANCES (CONTINUED):**

**FOR DEFENDANT**      MORRISON & FOERSTER
**APPLE, INC.**         425 MARKET STREET
                    SAN FRANCISCO, CALIFORNIA  94105
            **BY:**  **PENELOPE PREOVOLOS, ESQUIRE**
                  **SUZANA PACHT BRICKMAN, ESQUIRE**


**FOR DEFENDANT**      MAYER BROWN
**AT&T MOBILITY**      TWO PALO ALTO SQUARE, SUITE 300
                    PALO ALTO, CALIFORNIA  94306
            **BY:**  **DONALD M. FALK, ESQUIRE**


**FOR DEFENDANT**      CROWELL MORING
**AT&T**              275 BATTERY STREET
                    23RD FLOOR
                    SAN FRANCISCO, CALIFORNIA 94111
            **BY:**  **JOEL D. SMITH, ESQUIRE**

1          **PROCEEDINGS; MONDAY, APRIL 9, 2012**

2

3          **THE CLERK:**  CALLING CASE 09-2054, IN RE: APPLE

4    IPHONE 3G PRODUCTS LIABILITY LITIGATION.

5          COUNSEL, PLEASE APPROACH AND STATE YOUR NAMES FOR THE

6    RECORD.

7          **MR. MANSFIELD:**  GOOD MORNING, YOUR HONOR.  ALAN

8    MANSFIELD, COUNSEL FOR PLAINTIFFS.

9          **MR. FALK:**  GOOD MORNING, YOUR HONOR.  DONALD FALK,

10   MAYER BROWN, LLP, COUNSEL FOR DEFENDANT AT&T MOBILITY.

11         **MR. HAIL:**  GOOD MORNING, YOUR HONOR.  JIM HAIL FOR

12   PLAINTIFFS.

13         **MR. BOWER:**  GOOD MORNING, YOUR HONOR.  DAVID BOWER,

14   FARUQI & FARUQI, FOR THE PLAINTIFFS.

15         **MS. PREOVOLOS:**  GOOD MORNING, YOUR HONOR.  PENELOPE

16   PREOVOLOS, MORRISON & FOERSTER, AND MY COLLEAGUE SUZANNA

17   BRICKMAN FOR APPLE, INC.

18         **MR. SMITH:**  GOOD MORNING, YOUR HONOR.  MY NAME IS

19   JOEL SMITH.  I'M WITH CROWELL MORING, AND I REPRESENT AT&T.

20         **THE COURT:**  VERY WELL.

21         SO BEFORE ME ARE A SERIES OF MOTIONS.  THERE'S A

22   MOTION BY DEFENDANT AT&T MOBILITY TO COMPEL ARBITRATION; A

23   MOTION BY APPLE TO COMPEL ARBITRATION; AND A MOTION BY APPLE TO

24   DISMISS.

25         WHO WANTS TO ADDRESS THE COURT ON BEHALF OF THE

1  MOVING PARTY?

2      **MR. FALK:**  GOOD MORNING, YOUR HONOR.  DONALD FALK ON

3  BEHALF OF AT&T MOBILITY.

4      AFTER HAVING APPEARED IN THIS COURT AND ADMITTED IN

5  THEIR COMPLAINT THAT THEY ALL ENTERED INTO THAT ALL PLAINTIFFS

6  ENTERED CONTRACTS WITH AT&T AND THAT ANY MOTION TO COMPEL

7  ARBITRATION WOULD BE A WASTE OF TIME, THEY NOW APPEAR AND SAY

8  NOBODY ACTUALLY ENTERED INTO A BINDING CONTRACT, AND ALL THESE

9  PLAINTIFFS HAVE BEEN RECEIVING SERVICE WITHOUT BEING SUBJECT TO

10  THE NORMAL TERMS AND CONDITIONS.

11      I THINK OUR REPLY AMPLY REBUTTED THAT CONTENTION WITH

12  REFERENCE TO THE VARIOUS AGREEMENTS THAT PLAINTIFFS HAVE

13  ENTERED INTO, AS WELL AS THE OBSERVATION THAT THIS -- ONE OF

14  THEIR SUBSIDIARY ARGUMENTS THAT LATER AGREEMENTS COULD NOT

15  CREATE BINDING ARBITRATION AGREEMENTS FOR PREEXISTING DISPUTES

16  IS BOTH CONTRARY TO THE PLAIN LANGUAGE OF THE FEDERAL

17  ARBITRATION LANGUAGE AND THE FINDINGS OF SEVERAL COURTS, NOT

18  THE LEAST OF WHICH WAS THE DISTRICT COURT IN *CONCEPCION* ITSELF.

19  THAT ARGUMENT WAS EXPRESSED BEFORE JUDGE SABRAW.  IT WAS

20  EXPRESSED IN THE NINTH CIRCUIT AND BEFORE THE SUPREME COURT.

21  JUDGE SABRAW RULED ON IT IN OUR FAVOR, AND THE OTHER COURTS DID

22  NOT EVEN FIND IT WORTHY OF MENTIONING.

23      WITH THE COURT'S PERMISSION, I WOULD LIKE TO PROVIDE

24  TO THE MAGNUSON-MOSS WARRANTY ACT CLAIMS, UNLESS THE COURT HAS

25  FURTHER QUESTIONS ON CONTRACT FORMATION.

1           **THE COURT:**  I DON'T.  YOU CAN PROCEED TO THAT.

2  ALTHOUGH PERHAPS YOU SHOULD ALLOW YOUR OPPONENT TO PRESS THEIR

3  CASE UNDER THAT FIRST, BUT I WOULD BE HAPPY TO HEAR YOUR

4  RESPONSE.

5           **MR. FALK:**  I WILL DO IT THE WAY -- IF YOUR HONOR

6  WOULD PREFER, I'M CERTAINLY QUITE HAPPY TO RESERVE MY FIRE ON

7  THE MAGNUSON-MOSS ACT UNTIL REBUTTAL, WHATEVER SUITS YOUR

8  HONOR.

9           **THE COURT:**  WHY DON'T WE DO THAT?

10          **MR. FALK:**  THANK YOU, YOUR HONOR.

11          **MS. PREOVOLOS:**  GOOD MORNING.  PENELOPE PREOVOLOS FOR

12 APPLE, INC.

13          I DON'T KNOW HOW FAR YOU WANT ME TO PROCEED IN TERMS

14 OF THE ARBITRATION ISSUES BEFORE WE TURN TO PLAINTIFFS, BUT WHY

15 DON'T I START, AND THEN YOU CAN -- THE COURT CAN GUIDE ME AS TO

16 WHAT YOU WANT TO HEAR.  I'M REALLY HERE TO ADDRESS TWO ISSUES,

17 WHETHER PLAINTIFFS ARE EQUITABLY ESTOPPED FROM REFUSING TO

18 ARBITRATE THEIR CLAIMS WITH APPLE, AND THEN ALSO, OBVIOUSLY,

19 THE MAGNUSON-MOSS ISSUE THAT MR. FALK AVERTED TO.  MY SENSE IS

20 I PROBABLY SHOULD ADDRESS EQUITABLE ESTOPPEL NOW BUT RESERVE

21 ANY ARGUMENTS ON MAG-MOSS FOR PLAINTIFFS.  DOES THAT MAKE

22 SENSE?  OKAY.  SO, THAT'S HOW I'LL PROCEED.

23          YOUR HONOR, I THINK WHAT I WANT TO SAY IS THAT ONE

24 THING EVERYONE HERE CAN AGREE ON IS THAT PLAINTIFFS HAVE HAD A

25 NUMBER OF OPPORTUNITIES TO AMEND THEIR COMPLAINT, AND THAT WHEN

1  THEY PREPARED THEIR FIFTH AMENDED COMPLAINT, WHICH IS THE

2  OPERATIVE COMPLAINT BEFORE THE COURT, AND INDEED WHEN THEY

3  PREPARED THEIR FOURTH AMENDED COMPLAINT, THEY HAD EVERY

4  OPPORTUNITY TO PLEAD THEIR CLAIMS IN A WAY THAT WOULD AVOID

5  EQUITABLE ESTOPPEL AND A MOTION TO COMPEL ARBITRATION BY APPLE,

6  AND THEY CANNOT DO SO.

7          AND I THINK THEIR FIFTH AMENDED COMPLAINT MAKES THAT

8  VERY CLEAR FOR VERY MUCH THE SAME REASONS YOUR HONOR HELD IN

9  THE DECEMBER 1ST ORDER, THAT AT&T WAS A NECESSARY PARTY, AND

10 THAT IS SIMPLY THAT THE PLAINTIFFS' CLAIMS RELY ON AT&T'S

11 WIRELESS SERVICES AGREEMENT WHICH CONTAINS THE ARBITRATION

12 CLAUSE.  THEY ARE INTERTWINED WITH THE WIRELESS SERVICES

13 AGREEMENT, AND THEY ARE INEXTRICABLY INTERCONNECTED WITH AT&T,

14 ITS NETWORK, THE IPHONE'S PERFORMANCE ON THAT NETWORK, AND MUCH

15 AS THE PLAINTIFFS MAY SEEK TO IGNORE THE FACT THAT THE EMPEROR

16 IS NOT WEARING ANY CLOTHES, THE ADEQUACY OF THAT NETWORK TO

17 SUPPORT THE IPHONE 3G, THE LEVEL OF SPEED AND CONNECTIVITY OF A

18 PLAINTIFF'S REQUIRED, AND YOU CANNOT, TO INDULGE ANOTHER

19 METAPHOR, UNSCRAMBLE THAT PARTICULAR EGG, AND THAT MEANS THAT

20 BECAUSE PLAINTIFFS MUST ARBITRATE AS TO AT&T, THEY MUST

21 ARBITRATE AS TO APPLE.

22          I WOULD DIRECT THE COURT'S ATTENTION, REALLY, TO A

23 FEW SPECIFIC THINGS IN THE FIFTH AMENDED COMPLAINT BECAUSE I

24 THINK THE PLAINTIFFS' PLEADINGS ARE VERY TELLING.  SO I WOULD

25 DIRECT THE COURT'S ATTENTION TO WHAT IS NOW NUMBERED

1   PARAGRAPH 66.  I THINK IT'S MISNUMBERED BECAUSE IT APPEARS

2   BETWEEN PARAGRAPH 63 AND 64 ON PAGE 21 OF THE AMENDED

3   COMPLAINT.  IN THE PRIOR COMPLAINT I THINK IT WAS PARAGRAPH 62,

4   AND THE COURT REFERRED TO IT IN REACHING ITS CONCLUSION ON

5   PAGE 6 OF THE DECEMBER 1ST ORDER AND IN FOOTNOTE 10.

6           THAT PARAGRAPH SAYS IN PERTINENT PART, THAT IS

7   PARAGRAPH 66, THAT THEIR HARM WAS THAT THEY WERE LOCKED INTO

8   THE WIRELESS SERVICES AGREEMENT.  I THINK IT'S IMPORTANT

9   BECAUSE, AGAIN, I EMPHASIZE IF THE PLAINTIFFS COULD PLEAD

10  AROUND THIS, THEY WOULD HAVE, AND THEY CAN'T.  SO PLAINTIFFS

11  SAY THAT THEY PAID MORE TO RECEIVE ESSENTIALLY THE SAME, IF NOT

12  INFERIOR PERFORMANCE, IN ADDITION TO THE $299 COST OF THE

13  IPHONE 3G, THE CELLULAR CARRIER, AT&TM, CHARGED CONSUMERS

14  $10.00 PER MONTH FOR 24 MONTHS TO SIGN UP FOR 3G NETWORK

15  COVERAGE AND A $28.00 ADDITIONAL EQUIPMENT CHARGE.  NOW, THE

16  24-MONTH SIGN UP IS THE WIRELESS SERVICE AGREEMENT.  CUSTOMERS

17  WERE REQUIRED TO ENTER INTO A TWO-YEAR DATA PLAN CONTRACT WITH

18  THE CELLULAR CARRIER -- THAT WOULD BE THE WSA -- TO USE THEIR

19  IPHONE 4G.

20          THEN THE SECOND PARAGRAPH I WOULD DRAW THE COURT'S

21  ATTENTION TO, BECAUSE I THINK IT'S THE SECOND SHOE DROPPING, IF

22  YOU WOULD, IS PARAGRAPH 65, WHICH SAYS THAT AS A RESULT OF

23  APPLE'S MATERIAL MISREPRESENTATIONS AND OMISSIONS OF MATERIAL

24  FACTS, PLAINTIFFS AND CLASS MEMBERS ARE, QUOTE, LOCKED INTO A

25  TWO-YEAR SERVICE PLAN.  THAT'S THE WSA.  WITH, DUE TO HARDWARE

1   AND/OR SOFTWARE DEFICIENCIES IN THE IPHONE 3G, BUT YOUR HONOR'S

2   HEARD THAT ONE, LIMITED SUSTAINED -- HERE'S WHAT'S IMPORTANT --

3   LIMITED SUSTAINED 3G CONNECTIVITY AND SPEED.

4           SO THIS IS THE SAME OLD CLAIM DRESSED UP IN NEW

5   CLOTHING.  THE IPHONE DIDN'T HAVE SUFFICIENT SPEED AND

6   CONNECTIVITY ON THE NETWORK; PLAINTIFFS WERE LOCKED INTO THE

7   WSA CONTRACT, WITH THE R CLAUSE; PLAINTIFFS DIDN'T GET WHAT

8   THEY BARGAINED FOR.

9           AND THE COURT'S CONCLUSION IN THE DECEMBER 1ST ORDER

10  IS EXACTLY RIGHT, AND IT'S NOT CHANGED.  THAT WAS REFERRING TO

11  THE REFERENCES TO THE HARDWARE AND SOFTWARE MODIFICATIONS AND

12  APPLE'S SUPPOSED DECEPTIVE ADVERTISING AND SO FORTH, THAT THESE

13  COSMETIC MODIFICATIONS COULD NOT ALTER THE CORE ALLEGATION THAT

14  THE 3G NETWORK COULD NOT ACCOMMODATE IPHONE USERS AND THAT

15  PLAINTIFFS WERE DECEIVED INTO PAYING HIGHER RATES FOR SERVICE

16  WHICH COULD NOT BE DELIVERED ON THE 3G NETWORK.

17          THAT IS AN ALLEGATION THAT PLAINTIFFS PAID TOO MUCH

18  UNDER THE WSA, THAT THEY DIDN'T GET THE SERVICE THAT THEY

19  BARGAINED FOR UNDER THE WSA, AND IT IS ALL ABOUT AT&T'S

20  NETWORK, AT&T'S SERVICE.  THE CLAIMS ABOUT THE PHONE ARE

21  INEXTRICABLY INTERTWINED WITH THE CLAIMS AGAINST AT&T.

22          LET ME ADD ONE BE OTHER THING.

23          THE PLAINTIFFS STILL HAVE A RICO CLAIM.  THEY DIDN'T

24  DROP IT.  THE RICO CLAIM SAYS APPLE AND AT&TM ACTED WITH A

25  COMMON PURPOSE TO CAUSE MORE PEOPLE TO BUY PHONES AND TO SIGN

1    UP FOR SERVICE UNDER THE WSA.  THIS CASE IS PREGNANT WITH THE

2    WSA, AND IT IS PREGNANT WITH ALLEGATIONS OF INTERCONNECTED

3    CONDUCT AGAINST APPLE AND AT&T.

4          SO, PLAINTIFFS' CLAIM RELY ON THE WSA, IF YOU WILL,

5    UNDER THE FIRST PRONG OF *MUNDI*, OR YOUR HONOR'S DECISION IN THE

6    AT&TM CASE.  BUT EVEN WITHOUT RESPECT TO THE FIRST PRONG THEIR

7    CLAIM'S UNDER, THE SECOND PRONG ARE INDUBITABLY INTERTWINED

8    WITH THE WSA.

9          IT IS NOT POSSIBLE TO ARGUE WITH A STRAIGHT FACE THAT

10   THE CLAIMS AGAINST APPLE AND AT&T M ARE COMPLETELY

11   INTERCONNECTED, INTERTWINED, ALL ABOUT AT&T'S NETWORK, AND YOU

12   CANNOT SEPARATE THE PHONE SPEED FROM SERVICE ON THE NETWORK AND

13   SERVICE UNDER THE WSA.

14         **THE COURT:**  I UNDERSTAND THAT ARGUMENT.  WHY DON'T

15   YOU SAVE THE REST OF YOUR TIME FOR REBUTTAL?

16         **MS. PREOVOLOS:**  THAT'S FINE, YOUR HONOR.

17         THE ONE THING I DID WANT TO ADD IS JUST TO REFERENCE

18   OUR FILING OF JUDGE BARBIER'S DECISION IN THE *MMS* MDL, WHICH

19   WAS A DECISION ISSUED AFTER THE BRIEFING IN THIS CASE.  JUDGE

20   BARBIER, WHO HAS THE MDL IN THE EASTERN DISTRICT OF LOUISIANA,

21   DEALT WITH PRETTY MUCH EXACTLY THE SAME ISSUES HERE.  THE

22   UNDERLYING CLAIM IS A BIT DIFFERENT.  THE UNDERLYING CLAIM IS

23   THAT SO-CALLED MOBILE MESSAGES SERVICE, OR MMS, WHICH IS

24   TEXTING PICTURES ON THE PHONE, WAS PROMISED EARLIER THAN IT WAS

25   PROVIDED; THAT BECAUSE THE ORIGINAL CLAIM -- THE ORIGINAL

1  COMPLAINT, VERY MUCH LIKE THIS ONE, SAID THAT THAT PROBLEM WAS

2  DUE TO INADEQUACIES OF THE AT&TM NETWORK, AND APPLE JUST

3  MISREPRESENTED THOSE INADEQUACIES; PLAINTIFFS BASICALLY TRIED

4  TO GET AWAY FROM THAT, PLED A LOT OF DIFFERENT THINGS, PLED,

5  OH, NO, IT'S ALL ABOUT APPLE ADVERTISING, DISMISSED AT&T.

6  JUDGE BARBIER SAID, NO, AT&T IS A NECESSARY PARTY, BUT I'M NOT

7  GOING TO REQUEST THEY BE JOINED BECAUSE THE CLAIMS AGAINST THEM

8  WOULD BE REQUIRED TO BE ARBITRATED.  THEN HE WENT ON AND MADE

9  THE EQUITABLE ESTOPPEL FINDING THAT WE'RE ASKING THE COURT TO

10 MAKE TODAY.

11         JUDGE BARBIER HELD THAT THE PLAINTIFFS IN THAT CASE

12 WERE EQUITABLY ESTOPPED FROM REFUSING TO ARBITRATE THEIR CLAIMS

13 AGAINST APPLE BECAUSE THEIR CLAIMS WERE INTERTWINED WITH THE

14 WSA AND THEIR CLAIMS AGAINST AT&T AND APPLE WERE INEXTRICABLY

15 INTERCONNECTED.  SO JUDGE BARBIER MADE THE FINDING JUST A

16 COUPLE OF WEEKS AGO ON MARCH 21ST THAT WE'RE ASKING THE COURT

17 TO MAKE HERE TODAY.

18         AND INTERESTINGLY, OR IMPORTANTLY, I THINK, IN LIGHT

19 OF ISSUES THAT WE ARE AWARE OF REGARDING THE *MUNDI* CASE, JUDGE

20 BARBIER FLATLY SAID, BECAUSE HE READ CASES ACROSS THE COUNTRY,

21 THE CASE FOR EQUITABLE ESTOPPEL WAS MUCH STRONGER WHERE

22 ARBITRATION WAS BEING SOUGHT TO BE COMPELLED ON EQUITABLE

23 ESTOPPEL GROUNDS AGAINST A SIGNATORY PLAINTIFF AS OPPOSED TO A

24 NONSIGNATORY PLAINTIFF.

25         HE NOTED AN EARLIER DECISION IN THE NORTHERN DISTRICT

1  THE *AMISIL* CASE, AS WELL AS THE BRIDES CASE IN THE FIFTH

2  CIRCUIT, AND OTHER CASES AROUND THE COUNTRY, WHERE EQUITABLE

3  ESTOPPEL PRINCIPLES WERE HELD TO SUPPORT COMPELLING ARBITRATION

4  AGAINST A NONSIGNATORY DEFENDANT WHERE CLAIMS WERE BROUGHT BY

5  A -- TO AFFIRM A COMPELLING ARBITRATION BY A NONSIGNATORY

6  DEFENDANT WHERE PLAINTIFFS WERE PURSUING CLAIMS AGAINST BOTH A

7  SIGNATORY AND NON-SIGNATORY DEFENDANT.

8          AND HE FINALLY NOTED -- AND I THINK THAT'S IMPORTANT

9  TO THIS CASE.  I WILL OBVIOUSLY COMMEND JUDGE BARBIER'S OPINION

10  TO THE COURT.  IT'S NOT BINDING, BUT IT'S SQUARE ON POINT.

11  SAME PARTIES EXCEPT FOR THE DIFFERENT PLAINTIFFS.

12          BUT JUDGE BARBIER EMPHASIZED THE FACT THAT WHETHER

13  AT&T WAS A PARTY OR NOT, THE NATURE OF THE CLAIMS MEANT THAT

14  AT&T WAS GOING TO BE DRAGGED INTO THE CASE, AND THAT RESULT WAS

15  VERY CONSISTENT WITH NOTIONS OF DETRIMENTAL RELIANCE AND -- AND

16  MEANT THAT THE INTENT OF THE FEDERAL ARBITRATION ACT REALLY

17  WOULD BE FRUSTRATED IF THE CLAIMS AGAINST APPLE WERE NOT SENT

18  TO ARBITRATION, BECAUSE THE RESULT THEN WOULD BE THAT A PARTY

19  THAT HAD SIGNED THE AGREEMENT WOULD NOT ENJOY THE BENEFITS OF

20  ARBITRATION BUT WOULD BE PULLED, AT A MINIMUM, INTO DISCOVERY

21  AND LITIGATION.

22          **THE COURT:**  THANK YOU.

23          **MR. MANSFIELD:**  GOOD MORNING, YOUR HONOR.  ALAN

24  MANSFIELD.  I AM GOING TO JUST BRIEFLY ADDRESS THE QUESTION

25  ABOUT THE FORMATION OF THE CONTRACT, AND MR. BOWER IS GOING TO

1   BE ADDRESSING THE QUESTION OF EQUITABLE ESTOPPEL.  MR. -- WHEN

2   WE GET TO THE ISSUE OF *KOLEV* AND ITS IMPLICATIONS, MR. HAIL

3   WILL BE ADDRESSING THAT QUESTION.

4           AS FAR AS THE FORMATION OF THE CONTRACT, JUST SO

5   WE'RE ALL CLEAR, WHAT OUR POSITION WAS WAS THAT THE LAW OF

6   CALIFORNIA, AS WELL AS THAT OF ARKANSAS, FLORIDA, MARYLAND,

7   NORTH CAROLINA, NEW JERSEY, NEW YORK, AND WASHINGTON, IS THAT

8   ONE JUDGES THE QUESTION OF UNCONSCIONABILITY AT THE TIME OF THE

9   FORMATION OF THE CONTRACT.  THE TIME OF THE FORMATION OF THE

10  CONTRACT WAS WHEN THE PERSONS BOUGHT THEIR PHONES, WHICH WAS

11  BETWEEN JULY OF 2008 AND DECEMBER OF 2008.

12          AT&T SUBSEQUENTLY AMENDED THEIR CONTRACT IN MARCH OF

13  2009.  IN THEIR PAPERS THEY SAY WE DID THAT BY VIRTUE OF A

14  MAILING.  THEY DIDN'T SAY IT WAS AS A RESULT OF A MAILING THAT

15  ALL THE PLAINTIFFS RECEIVED, EVEN THOUGH IT'S PRESUMABLY THEY

16  WOULD HAVE THAT INFORMATION, BECAUSE THEY SPECIFICALLY SAID IT

17  WAS ONLY THE PEOPLE WHO WERE RECEIVING THEIR BILLS IN THE MAIL,

18  NOT PEOPLE WHO RECEIVED THEIR BILLS ON LINE, AND THAT IS THE

19  PROVISION THAT WAS BEING DISCUSSED IN CONCEPCION.

20          SO OUR POSITION THAT WE WERE TRYING TO MAKE CLEAR WAS

21  THAT:  DID PEOPLE ENTER INTO A CONTRACT AS PART OF THE

22  REQUIREMENT OF BUYING A PHONE?  YES.  DID THOSE PEOPLE HAVE THE

23  PROVISION THAT THEY ARE ATTEMPTING -- THAT AT&T IS ATTEMPTING

24  TO ENFORCE?  NO.  DO YOU JUDGE UNCONSCIONABILITY AT THE TIME

25  THAT THE CONTRACT IS FORMED?  YES.  THEREFORE, IN LIGHT OF

1  THAT, ALL OF THE 97 EXHIBITS THAT THEY HAD TO SUBMIT TO TRY TO

2  CONVINCE THIS COURT THERE WAS A CONTRACT ARE IRRELEVANT.

3         IF THERE WAS, IN FACT, A CLEAR PROVISION, THEY SIMPLY

4  WOULD HAVE SUBMITTED 13 AGREEMENTS; SAID, HERE ARE THE

5  AGREEMENTS, AND THAT'S THE END.  INSTEAD, THEY HAD TO BRING OUT

6  ALL THESE OTHER AGREEMENTS TO TRY TO CONVINCE THIS COURT THAT

7  THERE WAS, IN FACT, ONE.

8         OUR POSITION IS SIMPLY YOU JUDGE UNCONSCIONABILITY AT

9  THE TIME OF THE FORMATION.  THAT WOULD HAVE BEEN BEFORE THIS

10 PROVISION WAS IN EFFECT.  AND SO, THEREFORE, ALL OF THE OTHER

11 MACHINATIONS THAT AT&T TRIES TO DO TO SAY THIS IS THE RELEVANT

12 PROVISION THAT APPLIES IS FINE.

13         IF WE WERE TALKING ABOUT THE PRIOR ITERATIONS OF THE

14 PROVISION, THAT WOULD BE A DIFFERENT DISCUSSION, BUT THAT'S NOT

15 WHAT WE'RE TALKING ABOUT.

16         THAT WAS THE POINT I WANTED TO CLARIFY.

17         **THE COURT:**  LET ME SEE IF I FOLLOW THAT.

18         **MR. MANSFIELD:**  SURE.

19         **THE COURT:**  IS IT YOUR POSITION THAT THIS IS A

20 CIRCUMSTANCE WHERE THE AT&T MOBILITY CONTRACT IS

21 UNCONSCIONABLE?

22         **MR. MANSFIELD:**  CORRECT.  WELL, THAT PROVISION OF IT.

23 THE CLASS ACTION WAIVER PROVISION IS UNCONSCIONABLE.

24         **THE COURT:**  WHAT DO YOU RELY ON FOR THAT?

25         **MR. MANSFIELD:**  THAT THE CONTRACT WAIVER PROVISION IS

1  UNCONSCIONABLE.  THE QUESTION THERE IS THAT THE PROVISION THAT

2  WAS DISCUSSED IN CONCEPCION WAS A DIFFERENT PROVISION.

3          **THE COURT:**  I UNDERSTAND THAT.  BUT WHAT IS YOUR

4  POSITION THAT THIS CONTRACT DATING BACK TO WHENEVER --

5          **MR. MANSFIELD:**  WHENEVER IT WAS?

6          **THE COURT:**  -- IF I ACCEPT THAT ARGUMENT IS

7  UNCONSCIONABLE.

8          **MR. MANSFIELD:**  THE QUESTION THERE WAS -- THE POINT

9  THAT WE RAISED WAS IN LIGHT OF THE CONTINUING CASE LAW THAT HAS

10 ADDRESSED THE QUESTION OF CLASS ACTION WAIVERS IN CALIFORNIA AS

11 WHAT LAW HAS BEEN DEVELOPED.  IN OTHER WORDS, THERE'S THE

12 QUESTION OF -- THE QUESTION THAT WAS RAISED IN *DISCOVER BANK*

13 WAS A PARTICULAR PROVISION.  THE SUPREME COURT IN *CONCEPCION*

14 SAID THAT PROVISION AS IT WAS PHRASED WAS UNCONSCIONABLE.

15          IT CAME -- AND THAT IS THE MATTER AT&T HAS BEEN

16 ARGUING.

17          OUR POSITION WAS THE PRIOR PROVISIONS WHICH DIDN'T

18 HAVE SOME THOSE PROTECTIONS THAT SUPPOSEDLY THE COURT FOUND

19 APPROPRIATE IN CONCEPCION PRESENT IN THE ORIGINAL CONTRACT OR

20 AT&T MADE NO ATTEMPT TO SHOW THAT.

21          THOSE PROVISIONS WERE THE PROVISIONS THAT WE SAID

22 MADE THIS MORE OF A CLASS ACTION WAIVER PROVISION; IN OTHER

23 WORDS, NOT A PROVISION COMPELLING ARBITRATION, BUT A PROVISION

24 THAT SAID IF YOU BRING A CLASS ACTION -- IF THIS PROVISION'S

25 STRUCK DOWN; IN OTHER WORDS, A PROVISION THAT SAYS A CLASS

1   ACTION WAIVER IS AN UNCONSCIONABLE OR ILLEGAL, THE ENTIRE

2   ARBITRATION CLAUSE GOES A WAY, THAT PROVISION IS WHAT WE WERE

3   SAYING IS UNCONSCIONABLE BECAUSE IT ESSENTIALLY CREATED THE

4   UNFAIR BARGAINING POWER AND THE INABILITY OF AN INDIVIDUAL --

5          **THE COURT:**  I UNDERSTAND YOUR ARGUMENT.  I JUST WAS

6   WONDERING WHAT YOUR AUTHORITY FOR THAT WAS.

7          **MR. MANSFIELD:**  THE AUTHORITY WOULD BE CASES SUCH AS

8   *BROUGTEN* AND THE OTHER CASES IN THE SUPREME COURT THAT HAVE

9   ADDRESSED THAT ISSUE.

10         **THE COURT:**  ALL RIGHT.

11         **MR. MANSFIELD:**  AS FAR AS THE QUESTION -- SORRY.

12         **THE COURT:**  I UNDERSTAND WHAT YOUR ARGUMENT IS, SO

13  LET'S MOVE ON TO THE OTHER PARTS.

14         **MR. MANSFIELD:**  THANK YOU, YOUR HONOR.

15         **MR. BOWER:**  GOOD MORNING, YOUR HONOR.  DAVID BOWER,

16  FARUQI & FARUQI.  I'M GOING TO TACKLE JUST THE EQUITABLE

17  ESTOPPEL ISSUE AND TRY TO ADDRESS THE POINTS THAT ARE RAISED IN

18  THE REPLY AS WELL AS ORAL ARGUMENTS TODAY.

19         I WANT TO START PROBABLY FROM THE END OF HER ARGUMENT

20  WHERE SHE TALKED ABOUT JUDGE BARBIER'S DECISION WHICH WAS

21  SUBMITTED TO THE COURT BY THE DEFENSE A FEW DAYS AGO, AND I'M

22  ASSUMING THE COURT'S HAD AN OPPORTUNITY TO READ THAT DECISION.

23         THAT DECISION PRETTY MUCH POINTS OUT MY POSITION WITH

24  REGARD TO THE CASE, AND THAT'S -- IN THAT CASE THEY FOUND THAT

25  THERE WAS -- THAT EQUITABLE ESTOPPEL DOES APPLY, AND THEY FOUND

1    IT DOES APPLY BECAUSE OF THE INTERTWINING OF THE CONTRACTS

2    BETWEEN AT&T AND APPLE.  BUT IN THAT CASE, THE ISSUE AND THE

3    ONLY ISSUE REALLY BEFORE THAT COURT WAS THE FUNCTIONING OF THE

4    MMS SYSTEM, AND THE MMS SYSTEM IS BASICALLY A WAY TO TAKE YOUR

5    IPHONE AND TRANSMIT A PHOTOGRAPH OR A MOVIE TO SOMEONE ELSE AT

6    A HIGHER RATE OF SPEED THAN YOU COULD BY JUST TEXTING.  THAT IS

7    A SYSTEM THAT'S TOTALLY RELIANT ON THE SYSTEM YOU'RE USING.  IT

8    WAS TOTALLY RELIANT ON THE AT&T SYSTEM.

9            IN OTHER WORDS, THE PROBLEM OCCURRED BECAUSE AT&T

10   JUST WASN'T READY FOR THE VOLUME OF MMS THAT WAS BEING USED,

11   AND THEY ADMITTED THAT, AND THAT'S WHERE THAT CASE AROSE FROM.

12   IT AROSE FROM THE FACT THAT AT&T COULDN'T HANDLE THE VOLUME

13   THAT THE IPHONE WAS BEING THRUST UPON THEM.

14           **THE COURT:**  YOU ARE CITING THAT TO DISTINGUISH IT

15   FROM THIS CASE?

16           **MR. BOWER:**  THE DIFFERENCE BETWEEN THAT AND OUR CASE

17   IS OUR CASE, WE CITE TO THE FACT THE PHONE ITSELF, EITHER THE

18   HARDWARE AND/OR THE SOFTWARE ITSELF THAT WAS CREATED BY APPLE.

19   AT&T HAD NOTHING TO DO WITH MANUFACTURING THE PHONE.  THEY HAD

20   NOTHING TO DO WITH MANUFACTURING THE SOFTWARE.  IT'S THE

21   SOFTWARE AND THE HARDWARE OF THE PHONE THAT WAS MALFUNCTIONING

22   WITH REGARD TO OUR CASE.  OUR CASE IS NOT A CASE OF HOW THE

23   SYSTEM WORKED ON AT&T'S PLATFORM.  IT WOULD HAVE BEEN THE

24   SAME -- WE WOULD HAVE HAD THIS CASE WHETHER OR NOT --

25           **THE COURT:**  WHERE IN YOUR COMPLAINT DO YOU MAKE THAT

1   CLEAR?  IN OTHER WORDS, WHAT I UNDERSTAND YOU NOW TO BE SAYING

2   IS THAT THIS PHONE CANNOT OPERATE AT THAT THE SPEEDS THAT IT

3   WAS ADVERTISED EVEN IN AN ENVIRONMENT THAT WOULD ALLOW IT TO.

4           **MR. BOWER:**  CORRECT.

5           **THE COURT:**  WHERE DO YOU ALLEGE THAT?

6           **MR. BOWER:**  IT'S SEVERAL PLACES IN OUR COMPLAINT.  IF

7   YOU LOOK AT PAGE THREE OF OUR COMPLAINT, PARAGRAPH FIVE,

8   APPLE'S REPRESENTATIONS REGARDING THE IPHONE 3G WERE FALSE AND

9   MISLEADING; THE IPHONE DID NOT RESULT IN THE TREMENDOUS VALUE

10  OR JUMP IN TECHNOLOGY THAT WAS TWICE AS FAST AS APPLE UNIFORMLY

11  PRESENTED TO CONSUMERS.

12          **THE COURT:**  THAT DOESN'T TELL ME THE REASON HAVING TO

13  DO SOLELY WITH THE HARDWARE OR SOFTWARE THAT IS -- I GUESS IT

14  WOULD BE FIRMWARE.

15          **MR. BOWER:**  LET ME REFER TO THE PARAGRAPH THAT WAS

16  CITED BY DEFENSE COUNSEL, WHICH IS PARAGRAPH 65 ON PAGE 21.

17  SHE CITED, OF COURSE, TO THE PORTION THAT SAYS, AS A RESULT OF

18  THE MISREPRESENTATIONS BY APPLE AND OMISSIONS OF THE MATERIAL

19  FACTS, PLAINTIFF AND CLASS MEMBERS ARE LOCKED INTO A TWO-YEAR

20  WARRANTY PLAN DUE TO HARDWARE AND/OR SOFTWARE DEFICIENCIES IN

21  THE 3G.  SHE DIDN'T POINT OUT THAT.  SHE ONLY POINTED OUT WHAT

22  SHE WANTED YOU TO HEAR.

23          IN THE NEXT SENTENCE, A SUBSTANTIAL FACTOR IN

24  ENTERING INTO THOSE AGREEMENTS WAS THE REPRESENTATION THAT THE

25  IPHONE 3G WOULD OPERATE AS A TRUE 3G INTERNET ACCESS DEVICE.

1          **THE COURT:**  HOW CAN IT OPERATE --

2          **MR. BOWER:**  WHICH IT DOES NOT --

3          **THE COURT:**  HOW CAN IT OPERATE?

4          **MR. BOWER:**  IT CAN ONLY OPERATE BY WAY OF THE

5   SOFTWARE THAT APPLE PUTS INTO THE PHONE AND BY WAY OF THE

6   PHYSICAL PHONE ITSELF AND HOW IT'S MADE UP.

7          IT HAS NOTHING TO DO WITH THE NETWORK.  WE WOULD HAVE

8   HAD THIS SAME PROBLEM HAD IT BEEN VERIZON, T-MOBILE, SPRINT.

9   IT WOULDN'T HAVE MATTERED WHAT PLATFORM IT WAS ON.

10          **THE COURT:**  WHERE DO YOU ALLEGE THAT?

11          **MR. BOWER:**  PARDON ME?

12          **THE COURT:**  WHERE DO YOU ALLEGE THAT?

13          **MR. BOWER:**  IT'S ALLEGED HERE THAT THE PROBLEM IS

14   WITH THE PHONE.  IT'S NOT WITH THE NETWORK.  IT'S NOT -- WE

15   DON'T ALLEGE IN THE COMPLAINT THAT IT'S THE NETWORK PROBLEM OR

16   THAT IT'S A NETWORK PROBLEM.

17          EVEN WHERE IT'S -- THEY ARGUE IN THEIR REPLY BRIEF

18   THAT WE ARE ALLEGING THAT THERE'S AN INCREASED COST BECAUSE OF

19   THE SLOWNESS OF THE PHONE, AND THAT'S THAT INCREASED COST THAT

20   AT&T WAS ABLE TO CHARGE BECAUSE THE PHONE WAS SLOW OCCURRED

21   BECAUSE THE PHONE WAS SLOW, NOT BECAUSE THEIR NETWORK WAS SLOW.

22          **THE COURT:**  WHY WOULD AT&T ENTER INTO IT AT ALL THEN?

23          **MR. BOWER:**  ENTER INTO?

24          **THE COURT:**  THE CHARGES.

25          **MR. BOWER:**  AT&T WAS ABLE TO CHARGE MORE BECAUSE WE

1  WERE ON THEIR SYSTEM LONGER.  BUT THAT'S NOT -- WE'RE NOT

2  BLAMING AT&T FOR THAT FACT.  WE'RE BLAMING THE PHONE FOR THAT.

3  THAT'S WHAT DRAWS US FAR APART FROM ANY OF THESE OTHER CASES

4  THAT HAVE BEEN CITED.  THERE'S JUST --

5          **THE COURT:**  SO YOU WOULD HAVE AT&T JOIN WITH YOU IN

6  THIS CASE?  IN OTHER WORDS, THEY ARE HARMED BECAUSE YOU AREN'T

7  SEEKING A REMEDY -- YOU AREN'T SEEKING ANY MONEY BACK FOR

8  HAVING PAID THE MONEY TO AT&T?

9          **MR. BOWER:**  WELL, IT'S AN ELEMENT OF DAMAGE THAT

10  WAS -- BUT IT'S NOT BECAUSE OF AT&T.  WE WOULD HAVE TO PAY

11  VERIZON MORE.  WE WOULD HAVE TO PAY SPRINT MORE.  IT WOULDN'T

12  HAVE MATTERED.

13          **THE COURT:**  HOW DO YOU KNOW?

14          **MR. BOWER:**  BECAUSE THE PHONE IS DEFECTIVE.  THAT'S

15  AN ISSUE FOR A TRIER OF FACT TO DECIDE, YOUR HONOR.  AS TO THE

16  PHONE BEING DEFECTIVE IS AN ISSUE FOR A TRIER OF FACT TO

17  DECIDE, BUT ULTIMATELY THAT'S OUR ALLEGATION.

18          OUR ALLEGATION IS THAT THE PHONE IS DEFECTIVE, NOT

19  THAT AT&T'S NETWORK WAS DEFECTIVE.  WE DON'T HAVE -- THERE'S

20  NOWHERE IN THE COMPLAINT WHERE WE ALLEGE THAT AT&T'S NETWORK

21  WAS DETECTIVE AND THAT'S WHY THE PHONE DIDN'T WORK.  IT'S

22  TOTALLY THE OPPOSITE WAY.

23          **THE COURT:**  LET ME ASSUME I UNDERSTAND THAT ARGUMENT.

24  LET'S MOVE ON TO THE MAGNUSON-MOSS PART OF THIS.

25          **MR. HAIL:**  GOOD MORNING, YOUR HONOR.  JIM HAIL FOR

1  THE PLAINTIFFS.

2          RECENTLY THE -- IN COUNT FIVE ON PAGE 32 AND 33 OF

3  THE OPERATIVE COMPLAINT, THE PLAINTIFFS ALLEGE A CLAIM FOR

4  MAGNUSON-MOSS, AND RECENTLY THE -- LAST SEPTEMBER, THE NINTH

5  CIRCUIT IN THE *KOLEV VERSUS U MOTORS WEST* DECISION HELD

6  MAGNUSON-MOSS CLAIMS ARE NOT SUBJECT TO PREDISPUTE BINDING

7  ARBITRATION.  BASED ON THAT DECISION, WE DO NOT BELIEVE THAT

8  YOUR HONOR CAN SEND OUR MAGNUSON-MOSS CLAIMS TO ARBITRATION.

9          NOW, THE DEFENDANTS HAVE CLAIMED THAT A SUBSEQUENT

10  SUPREME COURT DECISION, *COMPUCREDIT VERSUS GREENWOOD*, HAS IN

11  EFFECT OVERRULED THE *KOLEV* CASE.

12          NOW, THE -- THIS IS NOT THE CASE, BUT THE NINTH

13  CIRCUIT IN *MILLER VERSUS GAMMIE* HAS SET FORTH THE STANDARD FOR

14  DETERMINING WHETHER THIS COURT CAN DISREGARD THE *KOLEV* CASE

15  WHICH IS OTHERWISE SQUARE ON POINTS IN THIS CASE.  TO DISREGARD

16  *KOLEV*, THERE WOULD HAVE TO BE THE SUBSEQUENT SUPREME COURT

17  HERE.  *COMPUCREDIT* WOULD HAVE TO BE CLEARLY IRRECONCILABLE.

18  IT'S NOT CLEARLY IRRECONCILABLE.

19          THE SITUATION, THE STATUTES ARE DIFFERENT.  IN *KOLEV*

20  WE HAVE AN EXPRESSED ALLEGATION OF CONGRESSIONAL AUTHORITY TO

21  THE FTC FOR RULEMAKING AUTHORITIES TO CREATE RULES WITH RESPECT

22  TO INFORMAL DISPUTE RESOLUTION.

23          I THINK IT'S IMPORTANT TO UNDERSTAND WHAT THE *MILLER*

24  COURT FOUND WOULD BE IRRECONCILABLE CONFLICT FOR THIS COURT TO

25  IGNORE THE *KOLEV* CASE.

1              IN *MILLER* THE NINTH CIRCUIT HAD A STANDING PRECEDENT

2    THAT PROVIDED BLANKET IMMUNITY FOR 1983 CLAIMS TO CERTAIN

3    SOCIAL WORKERS.  NOW, SUBSEQUENT TO THAT DECISION, THERE HAD

4    BEEN SEVERAL SUPREME COURT CASES IN WHICH IT SAYS THAT THE

5    APPROACH FOR DETERMINING ABSOLUTE IMMUNITY WAS A MORE

6    FUNCTIONAL APPROACH AND NOT BLANKET IMMUNITY.  THE NINTH

7    CIRCUIT FOUND THAT'S THE TYPE OF DIRECT CONFLICT WITH A

8    SUBSEQUENT SUPREME COURT DECISION THAT WOULD ALLOW A DISTRICT

9    COURT OR ANOTHER PANEL OTHER THAN THE NINTH CIRCUIT TO IGNORE A

10   PRIOR PANEL DECISION.

11             **THE COURT:**  LET ME CLARIFY YOUR POSITION WITH RESPECT

12   TO YOUR FIFTH COUNT.  THIS IS A CIRCUMSTANCE WHERE THE WARRANTY

13   THAT YOU SEEK TO ENFORCE IS A LIMITED WARRANTY RATHER THAN A

14   FULL WARRANTY, CORRECT?

15             **MR. HAIL:**  IT'S APPLE'S WRITTEN WARRANTY.

16             **THE COURT:**  BUT IT'S A LIMITED WARRANTY; ALTHOUGH

17   EXPRESS, IT'S A LIMITED WARRANTY.

18             **MR. HAIL:**  I BELIEVE SO.

19             **THE COURT:**  ARE THERE ANY STATUTORY PROVISIONS OF

20   MAGNUSON—MOSS OR ANY REGULATIONS UNDER IT THAT SPEAK TO THE

21   NATURE OF A LIMITED WARRANTY CLAIM WITH RESPECT TO THE

22   REMEDIES?

23             **MR. HAIL:**  I THINK THE IMPORTANT THING WITH THE *KOLEV*

24   CASE, YOUR HONOR, IS THAT IT'S THE PREDISPUTE BINDING

25   ARBITRATION THAT THE CONSUMER CANNOT BE SENT TO WITHOUT HAVING

1  THE OPPORTUNITY TO CONSENT AFTER THE CASE HAS BEEN DEVELOPED.

2          **THE COURT:**  I'M NOT SURE YOU'RE ANSWERING MY

3  QUESTION.  I'VE READ THE CASE, AND I UNDERSTAND THE LANGUAGE OF

4  IT.  I'M NOT SURE THAT IT SPEAKS TO THE ISSUE I'M NOW FACED

5  WITH, WHICH IS THE LIMITED WARRANTY PROVISIONS OF

6  MAGNUSON-MOSS.  THEY'RE DIFFERENT FROM THE FULL WARRANTY

7  PROCEDURES THAT ARE SET FORTH IN MAGNUSON-MOSS.

8          AS I UNDERSTAND IT, WHEN YOU ARE ALLEGING A LIMITED

9  WARRANTY, YOU ARE ESSENTIALLY INCORPORATING INTO THIS FEDERAL

10  STATUTE THE STATE CLAIM, BREACH OF A LIMITED WARRANTY.  SO IF

11  YOU INCORPORATE A STATE CLAIM, IS THERE ANYTHING IN

12  MAGNUSON-MOSS OR ITS REGULATIONS THAT SAY YOU DON'T INCORPORATE

13  ALL OF THE LAW THAT AFFECTS THE STATE CLAIM?

14          THAT'S WHAT I'M TRYING TO FIGURE OUT WITH YOU AND

15  YOUR OPPONENTS AS TO WHETHER OR NOT I'M -- IF THERE WERE A

16  STRAIGHTFORWARD STATE IMPLIED OR LIMITED WARRANTY CLAIM, IT

17  WOULD BE SUBJECT TO ARBITRATION, CORRECT?

18          **MR. HAIL:**  NO, I THINK, YOUR HONOR, THE MAGNUSON-MOSS

19  DOES INCORPORATE VIOLATIONS OF STATE LAW INTO THE MAGNUSON-MOSS

20  ACT AND BASICALLY -- HAVING THE WRITTEN WARRANTY ITSELF ALONE

21  UNDER _KOLEV_, IT WOULD BE ENOUGH TO PREVENT THE ARBITRATION FROM

22  GOING FORWARD.  WE LITIGATE THAT IN THE COURT.

23          **THE COURT:**  BUT NOWHERE DOES JUDGE REINHARDT SPEAK TO

24  A FULL OR LIMITED WARRANTY AS MAKING A DISTINCTION, AND SO

25  WE'RE FACING FOR THE FIRST TIME IN THIS CASE THAT ISSUE.  SO

1  THAT'S WHAT, AS I SEE IT, IT MIGHT BE A MATTER OF FIRST

2  IMPRESSION.

3          MR. HAIL:  NO, I AGREE WITH YOU, YOUR HONOR.  I DON'T

4  BELIEVE THAT JUDGE REINHARDT MENTIONS THAT.  BUT BASED ON THE

5  FTC'S RULING AND ITS REGULATION, I DON'T THINK IT MATTERS AS

6  LONG AS THERE'S A WRITTEN WARRANTY.

7          THE COURT:  LET ME ASK YOU THIS:  WOULD YOU AGREE

8  THAT THERE ARE CASES WHERE THE STATE LAW CLAIM IS DISMISSED

9  WHERE BOTH A MAGNUSON-MOSS AND A STATE LAW CLAIM ARE ASSERTED,

10  AND, AS A CONSEQUENCE OF THE DISMISSAL OF THE STATE LAW CLAIM,

11  THE MAGNUSON-MOSS CLAIM IS ALSO DISMISSED?

12          MR. HAIL:  I UNDERSTAND THERE ARE CERTAIN PARTS OF

13  MAGNUSON-MOSS THAT INCORPORATE STATE LAW AND THAT MAYBE THE

14  EFFECT.  BUT RIGHT HERE WE'RE JUST DISCUSSING THE ISSUE OF

15  WHETHER THE MAGNUSON-MOSS CASES CAN BE SENT TO ARBITRATION IN

16  THE FIRST PLACE.  UNDER THE *KOLEV* CASE IT SAYS IT CANNOT BE.

17          THE COURT:  RIGHT, BUT YOU DIDN'T ANSWER THAT

18  QUESTION EITHER.

19          BUT IT SEEMS TO ME THAT IF I ANSWER THE QUESTION YES,

20  THAT THERE ARE CASES WHERE THE STATE LAW CLAIM HAVING BEEN

21  DISMISSED AUTOMATICALLY RESULTS IN A DISMISSAL OF

22  MAGNUSON-MOSS, THE QUESTION BECOMES THEN HOW FAR DOES THAT TIE

23  GO?

24          IN OTHER WORDS, IF YOU WOULD ARBITRATE THE STATE LAW

25  CLAIM, WHY CAN'T YOU ARBITRATE THE LIMITED WARRANTY

1  MAGNUSON—MOSS CLAIM?  NOW, I DON'T HAVE AN ANSWER TO THAT.

2  THAT'S WHAT I'M HOPING TO GET FROM YOU.

3          **MR. HAIL:**  RIGHT.  I THINK WE CAN PROCEED WITH THE

4  STATE BREACH OF WARRANTY CASES THAT ARE INCORPORATED THROUGH

5  MAGNUSON—MOSS BECAUSE OF THE EFFECT OF *KOLEV* THAT PREVENTS

6  MAGNUSON—MOSS CASES BEING SENT TO ARBITRATION.

7          **THE COURT:**  SO YOU WOULD HAVE ME READ MAGNUSON—MOSS

8  AS —— I MEAN, *KOLEV* AS SAYING ALL MAGNUSON—MOSS CLAIMS, WHETHER

9  FULL OR LIMITED WARRANTIES, ARE NOT SUBJECT TO PRELAWSUIT

10  ARBITRATION?

11          **MR. HAIL:**  YES, YOUR HONOR.

12          **THE COURT:**  DO YOU HAVE A CASE TO THAT EFFECT?

13          **MR. HAIL:**  WELL, *KOLEV* ADDRESSES IT BROADLY IN THE

14  SENSE THAT MAGNUSON—MOSS CASES ARE NOT ALLOWED TO GO, AND

15  ADDRESSES THE RULE—MAKING AUTHORITY THAT CONGRESS HAS SENT TO

16  THE FTC, AND THE PURPOSE IS TO PROTECT CONSUMERS, ALLOW THEM TO

17  PURSUE THEIR CLAIMS IN A COURT OF LAW.

18          I WOULD ALSO POINT YOUR HONOR TO WHAT APPLE DOES

19  NOT —— FOOTNOTE TWO.  APPLE DOES NOT HAVE AN ARBITRATION

20  AGREEMENT IN ITS WARRANTY AND HAS BEEN TRYING TO PROCEED

21  THROUGH ARBITRATION THROUGH EQUITABLE ESTOPPEL.  IN FOOTNOTE

22  TWO IT PROVIDES ANOTHER REASON FOR APPLE TO BE WITHHELD —— TO

23  BE KEPT OUT OF —— OUR CLAIMS AGAINST APPLE TO BE KEPT OUT OF

24  ARBITRATION IN THE SENSE THAT ——

25          **THE COURT:**  DO YOU DISTINGUISH THE CREDIT REPAIR

1  ORGANIZATION ACT THAT WAS THE SUBJECT OF THE SUPREME COURT'S

2  DECISION IN THIS *COMPUCREDIT VERSUS GREENWOOD* CASE FROM THE

3  CIRCUMSTANCE THAT THE COURT IS FACING NOW WITH MAGNUSON-MOSS?

4          **MR. HAIL:**  MOST DEFINITELY, YOUR HONOR.

5          **THE COURT:**  HOW?  WHAT IS THE DISTINCTION?

6          **MR. HAIL:**  FIRST YOU HAVE AN EXPRESSED ALLEGATION OF

7  RULE-MAKING AUTHORITY TO THE FTC.  UNDER THAT RULE-MAKING

8  AUTHORITY, THE FTC HAS CREATED RULES THAT PROHIBIT BINDING

9  PREDISPUTE ARBITRATION.

10         **THE COURT:**  WHERE DOES THE FTC IN ITS RULE MAKING

11 PRECLUDE BINDING PREDISPUTE ARBITRATION OF IMPLIED WARRANTY

12 CLAIMS?

13         **MR. HAIL:**  WELL, IT'S -- IT DOESN'T BREAK IT DOWN.

14 IT'S WARRANTY UNDER MAGNUSON-MOSS, AND THE MAGNUSON-MOSS CLAIM

15 YOU'VE --

16         **THE COURT:**  HOW ABOUT, WHERE DOES THE FTC PRECLUDE

17 BINDING PREDISPUTE ARBITRATION OF EXPRESS LIMITED WARRANTY

18 CLAIMS?

19         **MR. HAIL:**  IT'S SPOKEN BROADLY IN RULE 703, YOUR

20 HONOR.

21         **THE COURT:**  703 IS THE ONLY PLACE YOU CAN CITE TO ME?

22 READ THE LANGUAGE OF 703 THAT YOU BELIEVE COVERS EXPRESS

23 LIMITED WARRANTIES.

24         **MR. HAIL:**  LET ME FIND IT.  WELL, I WOULD CITE TO --

25 REFER YOURSELF TO PAGE 1027 OF *KOLEV* WHERE THE NINTH CIRCUIT

1   STATED HAD THE FTC'S EXPLANATION -- AND IT'S WITH RESPECT TO

2   ITS 1975 INTERPRETATION OF THE RULE -- CONCLUDED THAT, QUOTE,

3   "REFERENCE WITHIN THE WRITTEN WARRANTY TO ANY BINDING

4   NONJUDICIAL REMEDY IS PROHIBITED BY THE RULE AND THE ACT."

5           AND IN 1999 IT RESTATED THIS POSITION.

6           NOW, THE NINTH CIRCUIT GAVE, DUE TO THE TIME BETWEEN

7   THE ORIGINAL INTERPRETATION AND THESE FOLLOW-ON

8   INTERPRETATIONS, A PERIOD OF ABOUT 30 YEARS, IT GAVE

9   SIGNIFICANT DEFERENCE TO THE OPINION OF THE FTC.

10          **THE COURT:**  WELL, YOU SEE -- YOU KNOW, THAT'S THE

11  DILEMMA.  AND I APPRECIATE THAT YOUR ARGUMENT IS UNCLEAR,

12  BECAUSE PERHAPS THIS IS A CASE THAT NEEDS TO BRING CLARITY TO

13  IT, BUT THERE ARE SOME CONGRESSIONAL STATUTES WHICH ON THEIR

14  FACE YOU CAN SEE THE EXPRESS TERMS.  HERE WE HAVE A

15  CIRCUMSTANCE WHERE THE MAGNUSON-MOSS ACT ALLOWS CONSUMERS TO

16  ENFORCE WRITTEN AND IMPLIED WARRANTIES IN FEDERAL COURT BY

17  BORROWING STATE LAW CAUSES OF ACTION.

18          SO WHAT WE'RE DEALING WITH IS, WHAT ARE WE BORROWING

19  WHEN WE BORROW A STATE LAW CAUSE OF ACTION INTO FEDERAL COURT

20  IF THAT STATE LAW CAUSE OF ACTION IS SUBJECT TO ARBITRATION?

21  ARE WE ALSO BORROWING THAT SUBJECTIVITY?

22          **MR. HAIL:**  NO.  I THINK, YOUR HONOR, CONGRESS CAN

23  INCORPORATE STATE LAW INTO THE MAGNUSON-MOSS ACT, AND IT HAS

24  DONE SO FOR CERTAIN WARRANTY PROVISIONS.

25          WHAT'S IMPORTANT HERE IS THAT THE CONGRESS ALSO

1    EXPRESSLY DELEGATED RULE-MAKING AUTHORITY TO THE FTC, AND,

2    BASED ON THAT, IT HAS GIVEN ITS CONTRARY CONGRESSIONAL COMMAND

3    THAT FAA DOES NOT OVERRIDE ANOTHER CONGRESSIONAL POLICY AND

4    THESE CLAIMS CANNOT BE SENT TO ARBITRATION.

5            I'LL POINT YOUR HONOR TO PAGE 1030 OF THE *KOLEV* CASE.

6    NOW, IT WENT THROUGH THE -- A MAJORITY OF THE DECISION GOES

7    THROUGH *KOLEV* DISCUSSES THE FTC'S RULE-MAKING AUTHORITY AND THE

8    RULE IT ADOPTED WITH RESPECT TO THE CHEVRON ANALYSIS.

9            BUT IT ALSO STATES THAT IT AGREES THE FTC'S

10   LONG-STANDING INTERPRETATION OF MAGNUSON-MOSS AND THAT UNDER

11   THE *MCMAHON* -- UNDER THE SUPREME'S COURT *MCMAHON* TEST, WHICH

12   COMPUCREDIT DID FOLLOW AND DID NOT CHANGE, IT THOUGHT THAT

13   MAGNUSON-MOSS EVINCES IS DIFFERENT RULE AND CONGRESS HAS

14   ALLOWED THESE CASES TO STAY OUT OF ARBITRATION.

15           **THE COURT:**  SO, WHAT WOULD YOU HAVE ME DO IF

16   INDEED -- BECAUSE WHAT I SEE IN YOUR COUNT FIVE IS

17   INCORPORATING BY REFERENCE YOUR STATE LAW CLAIM.  YOU DON'T

18   ALLEGE ANY SEPARATE VIOLATION OF MAGNUSON-MOSS THAT IS

19   INDEPENDENT OF THE STATE LAW CLAIM.  YOU INCORPORATE --

20   ACTUALLY, YOU INCORPORATE EVERYTHING FROM THE PREVIOUS

21   PRECEDING PARAGRAPHS.

22           SO LET'S ASSUME THAT I WILL AFFIRM MY DECISION TO

23   SEND YOUR STATE LAW CLAIMS TO ARBITRATION, AND LET'S ASSUME FOR

24   THE SAKE OF ARGUMENT THAT YOU CAN OR YOU HAVE STATED A SEPARATE

25   MAGNUSON-MOSS ACT AND THAT THE LAW ALLOWS -- EXEMPTS THAT FROM

```
 1  ARBITRATION.  THEN WHAT?  WHAT DOES THE COURT DO NOW AT THIS
 2  POINT?
 3          MR. HAIL:  WELL, I DON'T BELIEVE YOUR HONOR CAN SEND
 4  THOSE, THE MAGNUSON-MOSS CASES, TO ARBITRATION IN THOSE
 5  CIRCUMSTANCES.
 6          THE COURT:  SO LET'S ASSUME I STAY THOSE HERE AND
 7  SEND YOU TO ARBITRATION.  IS THAT WHAT YOU WOULD WISH ME TO DO?
 8          MR. HAIL:  WE WOULD LIKE TO CONFER WITH OUR CLIENTS
 9  ABOUT THAT, IF THAT'S GOING TO BE YOUR DECISION, TO SEE HOW THE
10  CLIENTS WISH TO PROCEED, AND WE CAN CONFER WITH COUNSEL.
11          THE COURT:  I AM GOING TO BE MAKING MY DECISION.
12  BETWEEN NOW AND THE DECISION, I'M NOT GOING TO ASK YOU WHAT
13  YOUR CLIENTS THINK.  I'M ASKING WHAT YOUR POSITION IS TODAY AS
14  TO WHAT YOU WOULD WISH ME TO DO.
15          MR. HAIL:  I THINK IT WOULD BE OUR OPPORTUNITY FOR US
16  TO DISCUSS WITH THE CLIENT -- WE WOULD HAVE THE OPPORTUNITY
17  WHETHER WE WANT TO PURSUE IN FEDERAL COURT WITH THE
18  MAGNUSON-MOSS CLAIMS THAT ARE STILL ALIVE IN FEDERAL COURT.
19          THE COURT:  I SEE.  ALL RIGHT.  LET ME HEAR FROM YOUR
20  OPPONENTS.
21          MR. HAIL:  THANK YOU, YOUR HONOR.
22          MR. FALK:  BRIEFLY, ON THE CONTRACT FORMATION CLAIM,
23  I HAVE TO ADMIT THAT I WAS SHOCKED TO HEAR -- HAVING ARGUED
24  CONCEPCION IN THE DISTRICT COURT IN THE SUMMER OF 2008, I WAS
25  SHOCKED TO HEAR THAT CONCEPCION APPLIED TO THE 2009 CLAUSE.  I
```

1  DIDN'T REALIZE THAT EITHER JUDGE SABRAW OR THE SUPREME COURT

2  HAVE SUCH PRESENCE.

3        THE 2006 CLAUSE WAS AT ISSUE, THE ONE IN ALL OUR

4  DECLARATIONS AND THE ONE THAT APPLIED UP UNTIL EARLY 2009

5  WAS EXACTLY THE CAUSE AT ISSUE IN *CONCEPCION*.

6        **THE REPORTER:**  EXCUSE ME, COUNSEL.  CAN YOU SLOW

7  DOWN, PLEASE?

8        **THE COURT:**  YOU ARE ALSO BEING AGGRESSIVE WITH THE

9  MICROPHONE.

10        **MR. FALK:**  I'LL STAND BACK AND GO MORE SLOWLY.

11        THE SUPREME COURT IN A FOOTNOTE REFERENCED THE 2009

12  CLAUSE SAYING IT DID A COUPLE OF OTHER THINGS.  BUT WHAT WAS AT

13  ISSUE IN *CONCEPCION* WAS THE CLAUSE THAT WAS IN EFFECT IN 2008.

14  WE WERE NOT ARGUING A CLAUSE THAT HAD NOT COME INTO EFFECT BACK

15  IN SAN DIEGO FOUR YEARS AGO.

16        TURNING TO *KOLEV*, I THINK YOUR HONOR'S POINT ABOUT

17  THE STATE LAW CLAIMS AND HOW THEY'RE INCORPORATED, AT LEAST IN

18  LIMITED AND IMPLIED WARRANTY SETTING, SIMPLY UNDERSCORES THE

19  LACK OF KIND OF CLEAR STATEMENT THAT IS NECESSARY TO OVERRIDE

20  THE OTHER CLEAR STATEMENT IN THE FEDERAL ARBITRATION ACT THAT

21  SAYS CLAIMS GO TO ARBITRATION UNLESS CONGRESS HAS EXPRESSED AN

22  INTENT OTHERWISE THAT IS DIRECTED AT ARBITRATION UNDER THE FAA,

23  AND THERE IS NOTHING LIKE THAT HERE.

24        THE *KOLEV* DECISION, WHICH IS STILL SITTING WAITING

25  FOR ITS REHEARING PETITIONS TO BE RESOLVED AND ARE STILL

1  PENDING AFTER SOME MONTHS, THE MOMENT IT CAME OUT -- BEFORE

2  *COMPUCREDIT* IT WENT INTO CONFLICT WITH TWO CIRCUITS THAT, IN

3  FACT, FOLLOWED THE SAME ANALYSIS AS *COMPUCREDIT* IN SAYING YOU

4  NEED SOMETHING CLEARER THAN THIS.

5          THERE ARE TWO ASPECTS OF *COMPUCREDIT*, TWO ASPECTS OF

6  *KOLEV* THAT ARE PARTICULARLY UNDERCUT IN A WAY THAT WOULD PERMIT

7  THIS COURT TO DISREGARD IT UNDER *MILLER VERSUS GABNEY*, EVEN IN

8  THE ABSENCE OF THE PROBLEMS THE COURT HAS IDENTIFIED WITH THE

9  OTHER TYPES OF CLAIMS, WHERE IF THERE IS ANY STATEMENT AT ALL,

10  IT CERTAINLY ISN'T CLEAR ENOUGH TO OVERRIDE THE FAA.

11          THE FIRST PROBLEM IS THAT BOTH THE FTC AND THE NINTH

12  CIRCUIT RELIED EXPRESSLY ON THE FACT THAT A CIVIL ACTION IS

13  PROVIDED IN THE MAGNUSON-MOSS ACT ITSELF, AND THAT *COMPUCREDIT*

14  SQUARELY SAID IS NOT ENOUGH.  THAT'S WHAT THE NINTH CIRCUIT

15  SAID IN *COMPUCREDIT*, CITING ALL THE SAME CASES IT CITED IN

16  *KOLEV*.  THAT IS WHAT THE SUPREME COURT SAID IS NOT ENOUGH.

17  THAT SIMPLY SAYS THERE'S A RIGHT OF ACTION.  IT DOESN'T SAY

18  WHAT FORM IT HAS TO BE PURSUED IN.

19          THE SECOND ISSUE AND I THINK ONE THAT -- I THINK THAT

20  IS ENOUGH RIGHT THERE, BECAUSE THE FTC RELIED ON THAT IN

21  SAYING, WELL, YOU KNOW, THERE'S A CIVIL ACTION, SO CONGRESS

22  COULDN'T HAVE MEANT TO PERMIT PARTIES TO AGREE TO ARBITRATE

23  THESE CLAIMS.  AND THE SUPREME COURT SAID, NO, THAT'S NONSENSE,

24  THAT WOULD MEAN YOU COULD NEVER ARBITRATE A FEDERAL CLAIM FOR

25  WHICH THERE'S AN EXPRESS REMEDY.

1          THE OTHER ISSUE, THE WHOLE CHEVRON DEFERENCE ISSUE,

2    IS A RED HERRING FOR TWO REASONS.  FIRST, YOU NEVER GET PAST

3    STEP ONE OF LOOKING AT THE STATUTE AND SAYING WHAT KIND OF

4    STATEMENT CONGRESS HAS MADE.  UNDER *COMPUCREDIT* CONGRESS HAS

5    NOT MADE THE KIND OF STATEMENT IN THE MAGNUSON-MOSS ACT THAT

6    WOULD BE SUFFICIENT TO EVEN ALLOW AN AGENCY REASONABLY TO

7    CONCLUDE THAT CONGRESS HAD PRECLUDED ARBITRATION.  AND THE

8    REASON THAT IS SO IS THAT THE VERY LIMITED DELEGATION OF

9    RULE-MAKING AUTHORITY COMES IN A SPECIALIZED PROVISION OF THE

10   REMEDIAL STATUTE OF MAGNUSON-MOSS WHICH, IN FACT, WAS DESIGNED

11   TO ALLOW COMPANIES AND ENCOURAGE COMPANIES TO SET UP NONBINDING

12   INFORMAL DISPUTE RESOLUTION OF A NEW TYPE SUBJECT TO FTC

13   REGULATIONS THAT WOULD BE SOMETHING THE COMPANY COULD MAKE

14   ENFORCEABLE, AND THE STATUTE MAKES IT ENFORCEABLE AS A

15   PREREQUISITE TO FILING A LAWSUIT.

16          **THE COURT:**  WELL, IS THERE SUCH A PROVISION -- IS IT

17   YOUR ARGUMENT THAT EVEN UNDER A FULL WARRANTY, THAT THE FEDERAL

18   ARBITRATION ACT SUPERSEDES MAGNUSON-MOSS?

19          **MR. FALK:**  DOESN'T SUPERSEDE IT.  MAGNUSON SAID

20   THAT'S GOT IT BACKWARDS.  *KOLEV* SORT OF PROCEEDED AS IF WE'RE

21   JUST LOOKING AT MAGNUSON-MOSS AS IF THE FEDERAL ARBITRATION ACT

22   DIDN'T EXIST OR THEY'RE KIND OF AN INCONVENIENCE TO BE BRUSHED

23   ASIDE.

24          **THE COURT:**  NO, NO.  I DIDN'T GET YOUR ANSWER.

25          IS IT YOUR ARGUMENT THAT THE FEDERAL ARBITRATION ACT

1  SUPERSEDES THE PROCEDURES SET FORTH UNDER MAGNUSON-MOSS FOR A

2  FULL WARRANTY?

3         **MR. FALK:**  YES, YOUR HONOR, IT IS.  IT DOESN'T

4  SUPERSEDE IT, BUT I GUESS I'M -- THE ANSWER IS YES, THE FEDERAL

5  ARBITRATION ACT CONTROLS.  I THINK I TOOK TOO MUCH --

6         **THE COURT:**  SO YOU BELIEVE THAT *KOLEV* IS WRONGLY

7  DECIDED?

8         **MR. FALK:**  *KOLEV* IS WRONGLY DECIDED AND IT --

9         **THE COURT:**  I UNDERSTAND.  NOW LET ME ASK A SECONDARY

10  QUESTION.

11         IF I ASSUME THAT *KOLEV* IS THE OPERATIVE LAW AND ONLY

12  APPLIES TO A FULL WARRANTY, IF I JUST TAKE THAT LIMITED STEP

13  RATHER THAN THE FULL STEP YOU'RE ARGUING FOR, AND I ASSUME THAT

14  MAGNUSON-MOSS HAS A DIFFERENT SET OF PROVISIONS WITH RESPECT TO

15  IMPLIED AND LIMITED WARRANTIES AND THAT UNDER MAGNUSON-MOSS

16  CONSUMERS ARE ALLOWED TO ENFORCE THOSE LIMITED AND IMPLIED

17  WARRANTIES BY BORROWING STATE LAW CAUSES OF ACTION, WHICH IS

18  WHAT I WAS DISCUSSING WITH YOUR OPPONENT, WHAT IS IT TO SAY

19  THAT JUST BECAUSE YOU BORROW THE STATE LAW CAUSE OF ACTION AND

20  DECIDE IT ON THE SAME MERITS, THAT YOU ALSO BORROW THE STATE

21  LAW PROCEDURE, NAMELY ARBITRATION?

22         IN OTHER WORDS, CAN'T MAGNUSON-MOSS ALLOW FOR A STATE

23  LAW CAUSE OF ACTION SO THAT YOU JUDGE IT BY THE SAME STANDARDS

24  AND THE SAME MERITS BUT PROVIDE ITS OWN PROCESS?

25         **MR. FALK:**  WELL, I THINK IT COULD DO THAT, AND I

1    THINK -- BUT IN THAT CASE, I THINK THE ARBITRATION WOULD BE

2    LIKELY TO HAVE, YOU KNOW, THE SAME -- IT WOULD BE LOOKING AT

3    SOME OF THE SAME ISSUES AND THEN WOULD BE GOING FORWARD WHILE

4    THE -- ANY REMAINING FEDERAL CLAIM WAS STAYED OR THE -- ON

5    APPEAL OR, PERHAPS, LITIGATED, DEPENDING ON WHAT -- DEPENDING

6    ON WHAT COURSE THIS COURT CHOSE.

7              BUT I THINK THE POINT THAT I WAS TRYING TO MAKE IS

8    THAT IT'S NOT THAT THERE'S A SEPARATE PROVISION FOR FEDERAL

9    CLAIMS, WHICH I THINK MAY WELL BE TRUE, AND I THINK IT'S

10   CERTAINLY TRUE AS A MATTER OF CLEAR STATEMENT, BUT THE

11   PROVISION THAT IS THERE IS SOMETHING THAT IS DESIGNED NOT AS AN

12   ALTERNATE ROUTE OF DISPUTE RESOLUTION, LIKE BINDING

13   ARBITRATION, WHICH HAS BEEN AROUND FOR MANY, MANY DECADES

14   BEFORE MAGNUSON-MOSS CAME UP, BUT IS SOMETHING THAT IS

15   EXPLICITLY DESIGNED ONLY AS A PREREQUISITE TO LITIGATION AND,

16   IN FACT, WHAT SECTION 2310 DOES.  IT SAYS IF A COMPANY MAKES --

17   PUTS TOGETHER ONE OF THESE PROCEDURES, AN INFORMAL DISPUTE

18   RESOLUTION MECHANISM, THAT COMPLIES WITH FTC RULES, THEN A

19   CONSUMER CANNOT SUE WITHOUT GOING THROUGH THAT PROCESS FIRST.

20             IT IS CLEARLY -- THE VERY STRUCTURE OF THE STATUTE IS

21   AIMED AT SOMETHING THAT WINDS UP IN A JUDICIAL FORUM, JUST LIKE

22   SECTION E OF THE SAME SECTION PROVIDES A DIFFERENT PREREQUISITE

23   FOR CLASS ACTIONS, A NOTICE AND CURE, LIKE I'M SURE THIS COURT

24   HAS DEALT WITH PROBABLY A HUNDRED -- PROBABLY A THOUSAND TIMES

25   IN CLRA CLAIMS.  THERE'S ONE OF THOSE PROVISIONS IN

1   MAGNUSON—MOSS FOR CLASS CLAIMS, AND THIS PROVISION IS SOMETHING

2   THAT'S DESIGNED AS AN OPTIONAL —— OPTION TO THE COMPANY TO

3   PROVIDE SORT OF AN INITIAL SORT OF HURDLE FOR CONSUMERS TO GO

4   THROUGH BEFORE THEY CAN SUE.

5           IT DOES NOT EVEN ON ITS FACE ADDRESS BINDING

6   ARBITRATION UNDER THE FAA AND CANNOT COVER THAT.  IT IS ONE

7   THING FOR *KOLEV* TO MAKE THE POINTS IT MADE AND THE DECISION IT

8   REACHED BEFORE *COMPUCREDIT* IMPOSED —— I DON'T THINK IT IMPOSED

9   A HIGHER LEVEL OF CLARITY, BUT IT CONFIRMED YOU NEED SOMETHING

10  REALLY CLEAR THAT ADDRESSES ARBITRATION AND NOT JUST SOMETHING

11  THAT CAN BE BUILT INTO A —— YOU KNOW, A STATUTORY CONSTRUCT

12  THAT SOMEHOW COMES IN CONFLICT WITH ARBITRATION.

13          CONGRESS HAS TO SAY SOMETHING, AND CONGRESS SAID

14  SOMETHING ABOUT SOMETHING VERY DIFFERENT, A PREREQUISITE TO

15  LITIGATION, NOT AN ALTERNATE FORUM THAT THE FAA PROVIDES.

16          AND THAT IS WHY UNDER *COMPUCREDIT*, *COMPUCREDIT* MAKES

17  CLEAR THAT THIS PROVISION OF AN ALTERNATE REMEDY AND ALTERNATE

18  PREREQUISITE IS NOT SOMETHING THAT OVERRIDES THE FAA.  AND THE

19  FTC DOESN'T HAVE POWER TO DO THAT BECAUSE ITS RULE—MAKING

20  AUTHORITY IS LIMITED TO SETTING RULES FOR THESE INFORMAL

21  DISPUTE RESOLUTION MECHANISMS THAT CAN BE IMPOSED AS

22  PREREQUISITES TO LAWSUITS.  IT IS NOT GIVEN POWER TO OVERRIDE

23  THE FAA.

24          THE WORD "ARBITRATION" WAS NOT SOMETHING THAT WAS

25  UNKNOWN TO CONGRESS IN 1975.  IT IS SOMETHING THAT CONGRESS

1 COULD EASILY HAVE USED THAT WORD.  INSTEAD, IT CREATED A NEW

2 PROCEEDING AND EMPOWERED THE FTC TO MAKE THE RULES FOR THAT

3 PROCEEDING.  AND THE FTC, AS THE OTHER COURTS OF APPEALS

4 RECOGNIZE EVEN BEFORE *COMPUCREDIT*, OVERSTEPPED ITS BOUNDS.

5        BUT IF THERE WERE ANY DOUBT BEFORE *COMPUCREDIT*,

6 THERE'S NO DOUBT NOW.  AND IN LIGHT OF THAT, THE KEY

7 UNDERPINNINGS OF THE DECISION OF *KOLEV* HAVE BEEN TAKEN AWAY.

8 THERE'S NOTHING LEFT.  THERE'S NOTHING LEFT TO SUPPORT THE

9 DECISION.

10        AND IT IS SIMPLY EVEN A STRONGER CASE WHERE STATE LAW

11 IS INCORPORATED IN THE LIMITED AND IMPLIED WARRANTY CONTEXT AND

12 EVEN STRONGER CASE THAT THERE IS NEITHER A CLEAR STATEMENT IN

13 THE STATUTE, NOR REALLY A CLEAR STATEMENT BY THE FTC OR THE

14 POWER TO MAKE ONE.

15        **THE COURT:**  SHOULD I WAIT TO SEE WHAT HAPPENS IN

16 *KOLEV*?

17        **MR. FALK:**  THAT WOULD BE CERTAINLY A POSSIBILITY,

18 YES, YOUR HONOR.  I MEAN, AT SOME POINT THEY'RE GOING TO HAVE

19 TO TAKE UP THIS -- THEY'RE GOING TO HAVE TO RULE ON THIS

20 REHEARING PETITION.

21        WITH ALL CANDOR, IT HAS BEEN LONGER THAN -- I HAD ONE

22 GRANTED AFTER FOUR AND A HALF MONTHS ONCE, AND THIS IS IN MONTH

23 SIX.  I THINK IT'S BEEN A WHILE.  THEY ARE GOING TO HAVE TO

24 RESOLVE IT AT SOME POINT, BUT THEY HAVEN'T DONE IT YET, AND THE

25 COURT MIGHT WANT TO DO THAT.

1              **THE COURT:**  YOU DO CONCEDE THAT CONGRESS HAS THE

2     POWER TO CREATE A STATUTORY SCHEME THAT IS INDEPENDENT OF

3     ARBITRATION?

4              **MR. FALK:**  OH, OF COURSE IT DOES.  YES, ABSOLUTELY.

5     IT HAS THE POWER, JUST DID NOT DO SO HERE.  IT DID SOMETHING

6     VERY DIFFERENT IN SECTION 2310(A).

7              **THE COURT:**  HOW DO YOU READ 703?  YOUR OPPONENT CITES

8     THAT AS THE PLACE I SHOULD LOOK TO REGULATION THAT EMBRACES

9     ARBITRATION IN THIS --

10             **MR. FALK:**  IS THAT THE FTC RULE 703?  I MEAN, I READ

11    IT -- I THINK IT IS AT BEST AMBIGUOUS ON THAT POINT.  AND IF

12    THE FTC WERE EMPOWERED TO OVERRIDE ARBITRATION, IT WOULD NOT

13    HAVE DONE SO EXCEPT TO THE NARROWEST EXTENT SUSTAINABLE UNDER

14    THE WORDS OF THAT STATUTE -- THE WORDS OF THAT RULE, RATHER,

15    WHICH FAR EXCEEDED THE SCOPE OF THE STATUTE.

16             I WOULD SAY IF IT IS VALID AT ALL WOULD HAVE TO BE

17    VALID ONLY AS TO THE PURELY FEDERAL FULL WARRANTY CLAIMS.  BUT

18    BECAUSE THAT -- THAT RULE AS WELL RELIED ON TWO FALSE PREMISES,

19    NOT ONLY THE AVAILABILITY OF A CIVIL REMEDY, BUT EVEN MORE

20    CRITICALLY, ONE OF THE REASONS THE FTC GAVE FOR TRYING TO BAN

21    ARBITRATION IS THAT IT THOUGHT IT COULD NOT COME UP WITH RULES

22    THAT WOULD BE FAIR ENOUGH TO CONSUMERS, AND THAT -- THAT IS A

23    REFLECTION OF THE LINGERING HOSTILITY TOWARDS ARBITRATION THAT

24    THE SUPREME COURT'S INTERVENING DECISIONS SINCE THE '70S, AND

25    INDEED SINCE THE '90S, AGAIN AND AGAIN HAVE MADE CLEAR THAT

```
 1   ARBITRATION IS NOT SOMETHING TO BE TREATED AS A SECOND-CLASS

 2   REMEDY FOR CONSUMERS OR ANYBODY ELSE.  AS WELL AS THE *ALLIED*

 3   *TERMINIX* DECISION, THE COURT IT'S A PARTICULARLY VALUABLE FORM

 4   OF DISPUTE RESOLUTION.  AND IF ANYTHING WAS STILL IN DOUBT,

 5   *CONCEPCION* TOOK THOSE DOUBTS AWAY.

 6             **THE COURT:**  LET'S GIVE MS. PREOVOLOS -- SHE HAD A

 7   LITTLE BIT OF TIME LEFT -- AN OPPORTUNITY TO SPEAK TO THIS LAST

 8   ISSUE.

 9             **MR. FALK:**  THANK YOU.

10             **MS. PREOVOLOS:**  THANK YOU, YOUR HONOR.  I DON'T HAVE

11   A WHOLE LOT TO ADD.

12             FIRST, WITH RESPECT TO PLAINTIFFS' ARGUMENT ABOUT

13   IT'S JUST ABOUT THE PHONE, I MEANT WHAT I SAID EARLIER, WHICH

14   IS PLAINTIFFS HAVE HAD A NUMBER OF OPPORTUNITIES TO MAKE THAT

15   CLEAR, AND THEY CAN'T DO IT.  YOU KNOW, THEIR PLEADING IS ALL

16   ABOUT THE WIRELESS SERVICES AGREEMENT, IT'S ALL ABOUT THE

17   NETWORK.

18             THE TWO-YEAR AGREEMENT THEY REFER TO IN THE PARAGRAPH

19   COUNSEL WAS TALKING ABOUT IS NOT APPLE'S WARRANTY.  APPLE

20   DOESN'T HAVE A TWO-YEAR WARRANTY.

21             **THE COURT:**  I HEARD HIM SAY TWO-YEAR WARRANTY,

22   WHETHER THERE COULD BE A TWO-YEAR WARRANTY.

23             **MS. PREOVOLOS:**  THERE COULD BE, BUT THERE ISN'T.

24   IT'S A ONE-YEAR EXPRESS LIMITED WARRANTY, AND THAT'S CLEAR FROM

25   OUR PAPERS.
```

1          THE TWO-YEAR AGREEMENT IN THE CONTEXT OF WHAT THE

2    PLAINTIFFS ARE TALKING ABOUT IS THE WIRELESS SERVICES AGREEMENT

3    WITH AT&T.

4          IF YOU LOOK AT THE REST OF THAT PARAGRAPH, IT TALKS

5    ABOUT THE CUSTOMERS BEING, QUOTE, LOCKED INTO THE TWO-YEAR

6    AGREEMENT WITH AT&T.  THERE IS NO TWO-YEAR AGREEMENT WITH

7    APPLE.  AS YOUR HONOR POINTS OUT, THERE'S A ONE-YEAR LIMITED

8    WARRANTY.

9          SO, I THINK -- I MEAN, IN CANDOR, YOUR HONOR POINTED

10   OUT IN THE DECEMBER 1ST OPINION EXACTLY THE PORTIONS OF THE

11   COMPLAINT THAT THE COURT FELT THAT, ALTHOUGH COSMETICALLY

12   MODIFIED, STILL CLEARLY IMPLICATED AT&T'S NETWORK, ITS SERVICE,

13   AND THE WSA, AND THE PLAINTIFFS COULDN'T CHANGE THOSE.

14         SO TO SAY -- AND APART FROM THAT, I THINK WE TALKED

15   ABOUT THE FACT LAST TIME THAT A PHONE DOESN'T HAVE SPEED

16   WITHOUT A NETWORK.  AND THE PLAINTIFFS DON'T ALLEGE THAT IT

17   DOES.

18         SO I THINK THIS IS SQUARE ON THE TEST, YOU KNOW,

19   WHATEVER CIRCUIT TEST YOU LOOK TO FOR EQUITABLE ESTOPPEL.  IT

20   RELIES ON THE WSA, AND IF THEY CAN GET AROUND THAT, IT'S

21   INTERTWINED WITH THE WSA, AND THE INTERCONNECTEDNESS OF THE

22   ALLEGATIONS AGAINST APPLE AND AT&T ARE THERE.  AND I THINK THE

23   PLAINTIFFS HAVE HAD MORE THAN SUFFICIENT OPPORTUNITIES TO AMEND

24   THAT ASPECT OF THEIR COMPLAINT, EVEN AFTER BEING EDUCATED BY

25   THE COURT ON THIS PRECISE ISSUE IN BOTH THE DECEMBER OPINION

1   VERY SQUARELY IN THE TEXT ACCOMPANYING FOOTNOTE TEN, WHICH

2   POINTED TO THOSE VERY ALLEGATIONS AND ELSEWHERE.

3           AND -- SO I JUST DON'T THINK THERE'S ANY AVOIDING THE

4   FACT THAT WHAT THE PLAINTIFFS ARE SAYING -- WHAT PLAINTIFFS ARE

5   SAYING IS THE PHONE DIDN'T ACHIEVE SUFFICIENT SPEED; THERE

6   WASN'T SUFFICIENT CONNECTIVITY WITHOUT THE NETWORK; AND YOU

7   CAN'T MAKE THOSE -- AND THEY PAID TOO MUCH -- AS A RESULT, THEY

8   PAID TOO MUCH TO AT&T.

9           AND PLAINTIFFS' ANSWER WAS INTERESTING.  WHEN YOU

10  SAID, SO YOU AREN'T CLAIMING DAMAGES FOR WHAT YOU PAID UNDER

11  THE WSA; THEY SAID, YES, WE ARE, BUT THAT'S REALLY ABOUT APPLE.

12  THAT'S NONSENSE, YOUR HONOR.  THIS IS REALLY ABOUT BOTH

13  ENTITIES.  IT'S ABOUT THE NETWORK.

14          AND I DID THINK IT WAS ALMOST AMUSING WHEN THE

15  PLAINTIFF SAID, WELL, THE MMS WAS DIFFERENT BECAUSE IT WAS

16  ABOUT THE FACT THAT THE NETWORK WOULDN'T SUPPORT MMS.

17          I DON'T THINK WE'RE REQUIRED TO BLIND OURSELVES TO

18  WHAT THE PLAINTIFFS HAVE SAID THROUGHOUT, WHICH IS AT&T'S

19  NETWORK WASN'T ADEQUATE TO SUPPORT IPHONE.  IT DOESN'T GO AWAY.

20  IT CAN'T MAKE IT GO AWAY.  THEY DON'T EVEN REALLY TRY.  YOU

21  CAN'T -- AND, AGAIN, I THINK WE COME BACK TO THE SAME POINT,

22  THAT EVEN IF SOMEHOW YOU COULD PROCEED ON THESE CLAIMS AGAINST

23  APPLE ONLY IN A LITIGATION, AT&T WOULD COME IN IN DISCOVERY,

24  AND THAT WOULD COMPROMISE THEIR ARBITRATION RIGHTS.

25          SO I THINK THERE ARE A NUMBER OF DIFFERENT WAYS THAT

1  THIS CASE SIMPLY HAS TO GO TO ARBITRATION AS TO APPLE, IF, AS I

2  THINK THERE'S NOT MUCH DISPUTE, IT MUCH GO TO ARBITRATION

3  AGAINST AT&T.

4          NOW LET ME TURN VERY QUICKLY TO THE MAG-MOSS ARGUMENT

5  AND JUST MAKE A COUPLE OF POINTS.

6          IF YOU STEP BACK AND LOOK AT RULE 703, IT TALKS ABOUT

7  PREDISPUTE ARBITRATION PROVISIONS -- I'M SORRY, PREDISPUTE --

8          **THE COURT:**  MECHANISMS.

9          **MS. PREOVOLOS:**  LET ME TRY THAT.  QUOTE, MECHANISMS;

10 CAPITAL M, MECHANISMS.  I'LL NEVER GET THE ACRONYM RIGHT.

11 PRELITIGATION DISPUTE PROCEDURES, IF WE WANT THE ACRONYM.

12 MECHANISMS, MECHANISMS IN A WARRANTY AGREEMENT.  AND THE

13 COURT -- AND THE FTC SAID IN RULE 703, OKAY?  THOSE CAN'T BE

14 THE SUBJECT OF BINDING ARBITRATION.

15         BUT, YOU KNOW, I THINK IT IS WORTH LOOKING AT THE TWO

16 CIRCUIT COURT OPINIONS -- AND I'M NOT SUGGESTING THIS COURT CAN

17 DIVERGE FROM THE NINTH CIRCUIT, BUT *WALTON* AND *DAVIS* DO LOOK AT

18 RULE 703 IN MORE DETAIL THAN *KOLEV*.  AND THEY LOOK AT THE

19 PROVISION OF RULE 703 AND DRAW THE DISTINCTION THAT IT IS

20 ABOUT -- IT IS ABOUT MECHANISMS.  AND WE AREN'T DEALING WITH A

21 MECHANISM HERE.  WE ARE, AS YOUR HONOR CORRECTLY POINTED OUT,

22 DEALING WITH APPLE'S LIMITED WARRANTY, WHICH DOESN'T HAVE ANY

23 PROCEDURES FOR PRELITIGATION DISPUTE RESOLUTION.  THE

24 PLAINTIFFS' CLAIMS ARE ENTIRELY, AS YOUR HONOR NOTES, A

25 CREATURE OF STATE LAW.

1              SO IF YOU'RE LOOKING FOR SOMETHING UNAMBIGUOUS, IF

2    YOU ARE LOOKING FOR A CLEARLY CONTRARY COMMAND TO THE FAA, YOU

3    JUST DON'T FIND IT HERE, BECAUSE, YOU KNOW, YOU LOOK AT A RULE

4    THAT'S TALKING ABOUT MECHANISMS.  THESE AREN'T MECHANISMS.  YOU

5    LOOK AT A RULE THAT, AS YOUR HONOR TALKS ABOUT, IS TALKING

6    ABOUT FULL WARRANTIES.  BUT I DON'T KNOW THAT WE HAVE THAT

7    HERE.  BUT I DON'T KNOW THAT YOU NEED TO GET DOWN TO THAT,

8    BECAUSE I DO THINK *COMPUCREDIT* IS VERY CLEAR.  *COMPUCREDIT* SAYS

9    THERE HAS TO BE A CLEARLY CONTRARY CONGRESSIONAL COMMAND.

10             THE ISSUE WITH *KOLEV* IS -- I DON'T THINK THAT AT&T OR

11   APPLE ARE ASKING YOUR HONOR TO RULE INCONSISTENTLY OR REALLY

12   DIFFERENT THAN *KOLEV*, ALTHOUGH I THINK *KOLEV* WAS WRONGLY

13   DECIDED, BUT *KOLEV* REALLY DIDN'T ASK THE QUESTION -- I GUESS

14   WHAT I'D SAY IS KOLEV DIDN'T ASK OR ANSWER THE *COMPUCREDIT*,

15   BECAUSE *KOLEV* SAID THERE'S DELEGATION TO AN AGENCY AND WE APPLY

16   THE VERY DIFFERENTIAL CHEVRON STANDARD, AND WE ASK IF THE

17   AGENCY INTERPRETATION IS A, QUOTE, REASONABLE INTERPRETATION OF

18   THE STATUTE.  THAT'S A VERY DIFFERENTIAL LOW THRESHOLD.  THAT'S

19   NOT A CLEARLY CONTRARY CONGRESSIONAL COMMAND.  SO I THINK THE

20   PLAINTIFFS HAVE MULTIPLE PROBLEMS.

21             **THE COURT:**  BUT THEY DIDN'T HAVE A COMPARABLE SET OF

22   REGULATIONS IN THE SUPREME COURT CASE, DID THEY?

23             **MS. PREOVOLOS:**  WELL, THEY DIDN'T HAVE DELEGATION TO

24   AN AGENCY, BUT -- BUT THEY SAID THERE HAD TO BE A CLEARLY

25   CONTRARY CONGRESSIONAL COMMAND.

```
 1              THEY DID HAVE LEGISLATIVE HISTORY, THOUGH, VERY

 2   SIMILAR TO WHAT THE FTC AND KOLEV RELY ON HERE, WHICH IS THE

 3   IDEA THAT CONSUMERS HAVE TO HAVE A RIGHT TO GO TO LITIGATION,

 4   AND THAT'S WHAT CONCEPCION SAYS, NO, THAT'S WRONG UNDER THE

 5   FAA.

 6              BUT, I THINK THE POINT IS DELEGATION TO AN AGENCY AND

 7   DEFERENCE -- I GUESS WHAT I'D SAY IS THIS -- I'LL SUM UP, AND

 8   THEN I'LL BE DONE.

 9              THIS IS AT NUMEROUS REMOVES FROM A CLEAR

10   CONGRESSIONAL COMMAND, WHICH IS WHAT COMPUCREDIT SAYS YOU HAVE

11   TO HAVE.

12              SO LET ME TRY TO BE CLEAR AND FINAL ON THIS.

13              THERE IS NO CLEAR COMMAND ON THE FACE OF THE STATUTE,

14   MAG-MOSS.  THAT'S CLEAR.  MAG-MOSS IS SILENT AS TO ARBITRATION,

15   AND EVERYONE CONCEDES THAT.  SO THERE IS NO CLEARLY CONTRARY

16   CONGRESSIONAL COMMAND ON THE FACE OF THE STATUTE.

17              THE FTC -- SO THERE'S DELEGATION.

18              THE FTC RULE IS AT BEST UNCLEAR, BECAUSE THE SECOND

19   AND FIFTH CIRCUITS HAVE SAID -- AND IF YOU READ THE RULE, I

20   THINK YOU'LL COME AWAY WITH THE VIEW THAT IT TALKS ABOUT

21   MECHANISMS, AND THE NINTH CIRCUIT SORT OF DREW, AT BEST SORT OF

22   DREW AN INFERENCE FROM THAT THAT THEY MEAN IT ABOUT ARBITRATION

23   DIVORCED FROM MECHANISMS.  THAT'S AMBIGUITY NUMBER ONE.

24              AMBIGUITY NUMBER TWO IS IT TALKS ABOUT PREDISPUTE

25   RESOLUTION PROVISIONS WITHIN A WARRANTY.  WE DON'T HAVE THOSE
```

1  HERE.  AMBIGUITY NUMBER TWO.

2           AND, FINALLY, AND I THINK MOST IMPORTANTLY, KOLEV DID

3  NOT EXAMINE THE LEGISLATIVE HISTORY, WHICH IS BASICALLY SILENT

4  ON THIS ISSUE, EXCEPT FOR THE DELEGATION TO THE FTC OR WHAT THE

5  FTC DID WITH THE CORRECT STANDARD, AND THAT'S BECAUSE THE

6  CORRECT STANDARD HADN'T BEEN CLARIFIED AT THE TIME.

7           *COMPUCREDIT* SAYS THERE HAS TO BE A CLEAR

8  CONGRESSIONAL COMMAND, AND THE NINTH CIRCUIT SAID, WELL, THIS

9  IS -- BECAUSE THE STATUTE IS SILENT, WE'RE GOING TO BE

10 DIFFERENTIAL TO THE AGENCY; WE ARE GOING TO ASK IF IT'S A

11 REASONABLE INTERPRETATION.  AND THAT'S JUST NOT THE RIGHT

12 QUESTION UNDER *COMPUCREDIT*; IT'S THE WRONG QUESTION.

13           **THE COURT:**  THANK YOU, COUNSEL.

14           **MS. PREOVOLOS:**  THANK YOU, YOUR HONOR.

15           **MR. BOWER:**  YOUR HONOR, COULD I SPEAK JUST FOR A

16 SECOND?

17           **THE COURT:**  ONE SECOND.  THAT MEANS A MINUTE, WHICH

18 PROBABLY ENDS UP BEING FIVE MINUTES.

19           **MR. BOWER:**  YOUR HONOR HAD ASKED EARLIER WHERE IN THE

20 COMPLAINT ARE OUR ALLEGATIONS REGARDING THE PHONE ITSELF.  I

21 WOULD POINT TO PARAGRAPH 69 THROUGH 73 OF THE COMPLAINT WHERE

22 IT REALLY DOES GO INTO A FAIRLY DETAILED EXPLANATION OF IT'S

23 THE IPHONE 3G ITSELF THAT'S INADEQUATE.

24           **THE COURT:**  IN OTHER WORDS, YOU WOULD ALLEGE THAT

25 THERE ARE PHONES OPERATING ON THE AT&T NETWORK THAT DO OPERATE

```
 1   AT 3G, IT'S JUST THE APPLE PHONE THAT IS DEFECTIVE AND CANNOT

 2   OPERATE AT WHATEVER THAT SPEED, BECAUSE G IS NOT A SPEED -- YOU

 3   KNOW, I HAVE HAD THIS CONVERSATION BEFORE.  THAT'S YOUR

 4   ALLEGATION?

 5        MR. BOWER:  YES, IT'S THE PHONE ITSELF AND THE

 6   SOFTWARE.

 7        THE COURT:  IN OTHER WORDS, IT'S UNIQUE TO THIS

 8   PHONE; THIS PHONE IS DEFECTIVE IN THAT WAY?

 9        NOW, I HAVEN'T SEEN THAT LANGUAGE, BUT I'LL LOOK AT

10   THAT LANGUAGE TO SEE IF I CAN FIND IT --

11        MR. BOWER:  WE EVEN TALK ABOUT IN PARAGRAPH 71 --

12        THE COURT:  THAT THE NETWORK IS ROBUST ENOUGH TO

13   HANDLE IT; IT'S JUST THAT THIS PHONE IS NOT.

14        MR. BOWER:  RIGHT.  AND APPLE TRIED TO FIX IT, BUT

15   THEY NEVER FIXED IT.  THAT'S ALLEGED IN THOSE PARAGRAPHS 71

16   THROUGH 73.

17        IN FACT, TO SOLIDIFY MY POINT AS TO THE SEPARATION,

18   IF YOU LOOK AT OUR EXHIBIT 2 TO THE COMPLAINT, AND THAT IS

19   EXCERPTS FROM AT&T'S WEBSITE WHERE THEY -- THERE'S QUESTIONS

20   AND ANSWERS, AND ONE OF THE QUESTIONS IS, "WHAT IF I HAVE A

21   PROBLEM WITH MY IPHONE?"  THEY SAY --

22        THE COURT:  IN OTHER WORDS, YOUR ALLEGATION IS THE

23   AT&T 3G NETWORK IS NOT SOME SEPARATE ANIMAL; THAT IT'S JUST

24   AT&T'S NETWORK?

25        MR. BOWER:  YEAH, THEY ALL HAVE 3G NETWORKS AT THIS
```

```
 1   POINT.  VERIZON HAS THEM --

 2            THE COURT:  I'M SORRY.  IN OTHER WORDS, IS THE 2G

 3   NETWORK SEPARATE FROM A 3G NETWORK?

 4            MR. BOWER:  I'M NOT FAMILIAR WITH A 2G, AND THERE'S A

 5   4G NOW.

 6            THE COURT:  RIGHT, BUT I'M ASKING THAT.  YOU DON'T

 7   KNOW?

 8            MR. BOWER:  I CAN'T SAY THAT I DO.

 9            THE COURT:  AND SO THE 3G PHONE OPERATES ON A

10   NETWORK, BUT YOU'RE NOT SURE WHETHER IT'S A 3G NETWORK?

11            MR. BOWER:  RIGHT.  IT'S CALLED THE 3G PHONE.

12   OBVIOUSLY, THEY WANTED TO, I THINK, ADOPT THAT --

13            THE COURT:  BUT THERE IS NO SUCH THING AS A 3G

14   NETWORK?

15            MR. BOWER:  WELL, I DON'T KNOW THAT THERE'S NO SUCH

16   THING AS 3G NETWORK.  I MEAN, THERE IS A 3G NETWORK THAT YOU

17   CAN ACCESS FROM OTHER PHONES AS WELL.  IT WASN'T CREATED FOR

18   APPLE, THE 3G NETWORK, IF THAT'S WHAT YOU'RE REFERRING TO.

19            THE COURT:  I'M JUST TRYING TO UNDERSTAND IF THERE'S

20   A 3G NETWORK AND A 3G PHONE, HOW DO YOU KNOW WHETHER IT'S THE

21   PHONE OR THE NETWORK THAT'S THE PROBLEM?

22            MR. BOWER:  THE NAME OF THE PHONE AND THE NETWORKS

23   ARE NOT --

24            THE COURT:  BUT YOU HAVE TO SAY I CAN KNOW IT IS THE

25   PROBLEM BECAUSE OTHER 3G PHONES OPERATE AT 3G OVER THIS NETWORK
```

1    AND THE APPLE PHONE DOES NOT, AND YOU CAN ALLEGE THAT.

2              **MR. BOWER:**  AND THAT'S PART OF THE DECEPTIVENESS OF

3    THEIR ADVERTISING.

4              **THE COURT:**  RIGHT.  YOU HAVEN'T ALLEGED THAT, BUT YOU

5    ARE SAYING YOU CAN ALLEGE THAT.

6              **MR. BOWER:**  RIGHT, IT IS ALLEGED.

7              **THE COURT:**  I HAVEN'T FOUND IT.  I'LL LOOK AT YOUR

8    REFERENCES.

9              **MR. BOWER:**  BUT LOOK AT THOSE PARAGRAPHS.  AND ALSO

10   WITH REGARD TO PARAGRAPH -- OR EXHIBIT 2, WHICH IS EXCERPTS

11   FROM AT&T'S WEBSITE, THEY EVEN SAY, IF YOU HAVE A PROBLEM WITH

12   THIS PHONE, YOU NEED TO LOOK TO APPLE; IF IT'S A APPLE PRODUCT,

13   YOU NEED LOOK TO THEM FOR PROBLEMS WITH YOUR PHONE, DON'T LOOK

14   TO US.

15             **THE COURT:**  WHAT DOES IT MEAN, A PROBLEM WITH THE

16   PHONE?  IF YOU'RE USING THE PHONE IN A NETWORK AND YOU'RE NOT

17   EXPERIENCING THE SPEED THAT YOU WISH, IT COULD BE A COMBINATION

18   OF THE NETWORK AS WELL AS THE PHONE?

19             **MR. BOWER:**  IT COULD BE, BUT AT&T IS SAYING YOU LOOK

20   TO APPLE IF IT'S A PROBLEM WITH AN IPHONE.

21             **THE COURT:**  THAT'S TOO GENERAL.  IN OTHER WORDS, YOU

22   WOULD HAVE TO SAY IF YOU ARE HAVING A PROBLEM ACHIEVING 3G

23   SPEEDS ON OUR NETWORK WITH AN APPLE PHONE, THEN YOU NEED TO GO

24   TO APPLE BECAUSE OUR NETWORK IS ABLE TO OPERATE AT 3G WITH

25   EVERYTHING ELSE.

1           MR. BOWER:  RIGHT.

2           THE COURT:  THAT WOULD BE MORE SPECIFIC.

3           MR. BOWER:  RIGHT.

4           THE COURT:  THANK YOU.

5           MR. BOWER:  THANK YOU, YOUR HONOR.

6           MR. HAIL:  YOUR HONOR, COULD I MAKE QUICK POINT?  YOU

7    ASKED ABOUT THE INCORPORATION OF HOW THE STATE INCORPORATED

8    WARRANTY CLAIMS MAY BE AFFECTED?

9           THE COURT:  YES.

10          MR. HAIL:  I WOULD POINT YOUR HONOR TO PAGE 1025

11   WHERE THE PLAINTIFF HAS ALLEGED BREACH OF IMPLIED AND EXPRESSED

12   WARRANTS ADVERTISE UNDER MAGNUSON-MOSS.  AND THEN THE -- ABOUT

13   THE LAST PARAGRAPH OF JUDGE REINHARDT'S DECISION ON 1031 WHERE

14   HE -- THE LAST SENTENCE, YOUR HONOR -- HE REVERSED AND REMANDED

15   ALL BREACH OF WARRANTY CLAIMS, STATE AS WELL, AS THE BREACH OF

16   IMPLIED AS WELL AS EXPRESS, BACK TO THE DISTRICT COURT.  I

17   THINK ON THAT POINT THAT THE STATE-INCORPORATED CLAIMS WOULD BE

18   OUT OF ARBITRATION UNDER *KOLEV*.

19          THE COURT:  VERY WELL -- DECLINED.

20          MS. PREOVOLOS:  YES, YOUR HONOR.

21          THE COURT:  SUBMITTED.  THANK YOU.

22          (PROCEEDINGS ADJOURNED.)

23

24

25

## CERTIFICATE OF REPORTER

I, JOAN MARIE COLUMBINI, OFFICIAL REPORTER FOR THE UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS IN MDL 5-02044 JW, IN RE APPLE IPHONE 3G PRODUCTS LIABILITY LITIGATION, WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS AS BOUND BY ME AT THE TIME OF FILING.

THE VALIDITY OF THE REPORTER'S CERTIFICATION OF SAID TRANSCRIPT MAY BE VOID UPON DISASSEMBLY AND/OR REMOVAL FROM THE COURT FILE.

_____

JOAN MARIE COLUMBINI, CSR 5435, RPR

TUESDAY, MAY 8, 2012